J-S55040-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| VITO PELINO, | : | |
| | : | |
| Appellant | : | No. 608 WDA 2015 |

Appeal from the PCRA Order Entered March 31, 2015,
in the Court of Common Pleas of Allegheny County,
Criminal Division at No(s): CP-02-CR-0002578-2011

BEFORE:  FORD ELLIOTT, P.J.E., BENDER, P.J.E., and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED OCTOBER 14, 2015**

Vito Pelino (Appellant) appeals from the order entered March 31, 2015, dismissing his petition filed pursuant to the Post Conviction Relief Act (PCRA).[1]  We affirm.

This Court previously summarized the relevant factual history of this case as follows.

> On the evening of February 12, 2011, [the victim] was socializing with a group of friends at a bar…. Later that night [the victim] met [Appellant's sister, N.T.]. [N.T.] had come to the bar with [Appellant] after getting off work and having several drinks[.] … [The victim] and [Appellant] were introduced to each other by [N.T.], and the two men had incidental but friendly contact during the evening. [The victim] and [N.T.] talked, danced and drank for a couple of hours…. [Around 2:00 on February 13th, the victim's friend drove the victim] and [N.T.] to [N.T.'s] residence and returned to the bar…. [Appellant had] agreed to provide [the victim] with a ride home from [N.T.'s residence] after he took [his friend, Corey] Robert home

---

[1] 42 Pa.C.S. §§ 9541-9546.

* Retired Senior Judge assigned to the Superior Court.

[because the victim and Appellant] resided [in the same community].

[Appellant] arrived at [N.T.'s] residence at approximately 3:00 a.m. and the three of them drank and talked amicably inside. [The victim] at some point excused himself to use the bathroom and [N.T.], by that time intoxicated and tired, told [Appellant] that she needed [the victim] to be out of the residence because her boyfriend would be coming home soon. [Appellant] informed [the victim] of the circumstances, and although [the victim] had been excited about the potential of "hooking up" with [N.T., Appellant] persuaded [the victim] to leave with him.

[Appellant] and [the victim] left and drove into [their community] in [Appellant's] vehicle. During the ride [the victim] began talking about [N.T.] in a manner that [Appellant] perceived to be disrespectful…. A verbal argument ensued and [Appellant] stopped the vehicle [and] the argument escalated between the two men. [Appellant] then grabbed a knife that he had beside the driver's side door and began to stab [the victim].

[Appellant] inflicted 72 stab and incised wounds on [the victim], stabbing him until he was certain [the victim] was dead. Many of the incised wounds were defensive wounds to [the victim's] hands; and the most lethal wounds were stab wounds to [the victim's] neck, which transected his left carotid artery and perforated his trachea, as well as a stab wound to his back which penetrated his lung.

…[Appellant] drove home to his apartment … which was across the street from his mother's home. He parked his vehicle in the back of his mother's house and pushed [the victim's] body onto the back seat. [Appellant] went into his apartment and retrieved a black bed sheet, and returned to the vehicle to cover up [the victim's] body.

[Appellant] returned to his apartment, showered, discarded his blood soaked clothing and unsuccessfully attempted to contact Corey Robert to solicit his advice and aid[]. …[T]hat evening [Appellant] contacted Corey Robert and told him he needed his help…. [Appellant] picked Robert up [and the two men went] to the basement of [Appellant's] mother's home. As they entered the basement, [Appellant] told Robert that he

"killed that guy last night", and asked Robert if he saw a sign above the door that stated, "dead nigger storage."

Once they got into the basement, [Appellant] showed Robert a garbage bag, and a large blanket which was tied into a knotted packing laying in a puddle of blood. Both the garbage bag and the blanket contained the dismembered body parts of [the victim]. [Appellant] acknowledged that he had cut [the victim] up with a saw and put the parts in the garbage bag and blanket. [Appellant] had cut [the victim] into six parts: head, torso, two arms, and two legs. [Appellant] had discarded the knife he used to stab [the victim] and the saw he used to dismember him into the nearby Allegheny River.

[Appellant] and Robert loaded [the victim's] dismembered body into [Appellant's] vehicle. [Appellant] drove to a remote and heavily wooded area … where they loaded the garbage bag and bed sheet into a discarded wheel barrow…. They traveled on a path approximately 100 yards into the woods to the edge of a hillside where [Appellant] pulled out the dismembered body parts [from the garbage bag and bed sheet], took off any remaining clothing, and [he] and Robert threw the body parts over [a] hillside. [Appellant] gathered up the clothing, garbage bag and bed sheet and they returned to [Appellant's apartment] where they parted company….

A missing persons investigation … led the police to interview Cor[e]y Robert. Robert eventually gave police a detailed account of the events on February [13th] and took police to the wooded area where the dismembered body of [the victim] was recovered.

[Appellant] was arrested[.]

***Commonwealth v. Pelino***, 83 A.3d 1075 (Pa. Super. 2013) (unpublished memorandum at 1-3).

On March 15, 2012, following a jury trial, Appellant was convicted of first-degree murder and abuse of a corpse. On June 13, 2012, the trial court sentenced Appellant to a term of life imprisonment without the possibility of

parole for the first-degree murder charge, followed by a consecutive term of not less than one nor more than two years' incarceration for the abuse of corpse charge. Appellant's judgment of sentence was affirmed by this Court on August 27, 2013. *Id.* Appellant did not petition our Supreme Court for review. On July 17, 2014, Appellant timely filed a counseled PCRA petition, raising 13 claims of trial counsel ineffectiveness, which was denied by the PCRA court without a hearing on March 31, 2015. This timely appeal followed.

"Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." ***Commonwealth v. Koehler***, 36 A.3d 121, 131 (Pa. 2012) (citation omitted). "[Our] scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the PCRA court level." ***Id.*** "The PCRA court's credibility determinations, when supported by the record, are binding on this Court." ***Commonwealth v. Spotz***, 18 A.3d 244, 259 (Pa. 2011) (citation omitted). "However, this Court applies a *de novo* standard of review to the PCRA court's legal conclusions." ***Id.***

We also note that a PCRA petitioner is not automatically entitled to an evidentiary hearing. "A PCRA court's decision denying a claim without a

hearing may only be reversed upon a finding of an abuse of discretion."

***Commonwealth v. Walker***, 36 A.3d 1, 17 (Pa. 2011) (citation omitted).

> [T]he right to an evidentiary hearing on a post-conviction petition is not absolute. It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence. It is the responsibility of the reviewing court on appeal to examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing.

***Commonwealth v. Wah***, 42 A.3d 335, 338 (Pa. Super. 2012) (internal citations omitted).

In his statement of questions involved, Appellant raises one issue for our review: "Did the [PCRA] court abuse its discretion when it dismissed [Appellant's] PCRA petition pursuant to [Pa.R.Crim.P.] 907 where [Appellant] raised several genuine issue[s] of fact[] regarding ineffective assistance of trial counsel which[,] if resolved in his favor[,] would have entitled him to relief?" Appellant's Brief at 3 (unnecessary capitalization omitted). While the statement of questions is confined to this one issue, in the argument section of his brief, Appellant raises approximately 11 separate claims of ineffective assistance of counsel. ***Id.*** at 7-24. We have grouped these issues together for ease of disposition.[2]

---

[2] Appellant's counseled brief fails to conform in many respects to the mandates set forth in the Rules of Appellate Procedure. For example, it is well-established that "[t]he statement of the questions involved must state concisely the issues to be resolved, expressed in the terms and

- 5 -

To prevail on a claim of ineffective assistance of counsel under the PCRA, a petitioner must plead and prove by a preponderance of the evidence that counsel's ineffectiveness "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). A petitioner must establish "(1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) Appellant was prejudiced by counsel's act or

circumstances of the case but without unnecessary detail. The statement will be deemed to include every subsidiary question fairly comprised therein. No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby." Pa.R.A.P. 2116(a). Additionally, "[t]he argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). Moreover, "[i]f reference is made to the pleadings, evidence, charge, opinion or order, or any other matter appearing in the record, the argument must set forth, in immediate connection therewith, or in a footnote thereto, a reference to the place in the record where the matter referred to appears." Pa.R.A.P. 2119(c).

As stated above, Appellant sets forth one question for our review, yet argues multiple sub-issues. However, the argument section of his brief does not contain citations to the record, a synopsis of the relevant evidence surrounding each sub-issue, or statement of place raising or preserving any of those sub-issues. On these bases alone, we could dismiss this appeal. Pa.R.A.P. 2101. However, because the sub-issues contained in Appellant's argument were raised before the trial court in Appellant's PCRA petition and 1925(b) statement, our ability to address those issues is not impaired. **See Commonwealth v. Long,** 786 A.2d 237, 239 n.3 (Pa. Super. 2001) (finding that our ability to review an issue was not hindered by a violation of Rule 2116(a) when the issue was identified in the argument section of the brief). Although we are constrained to proceed with a review of Appellant's substantive issues, we do not condone counsel's flagrant violations of the Rules.

- 6 -

omission." **Koehler**, 36 A.3d at 132 (citing **Commonwealth v. Pierce**, 527 A.2d 973, 975 (Pa. 1987)). "Counsel is presumed to be effective and Appellant has the burden of proving otherwise." **Commonwealth v. Rivers**, 786 A.2d 923, 927 (Pa. 2001) (citations omitted). Furthermore, "[i]f an appellant fails to prove by a preponderance of the evidence any of the *…* prongs, the Court need not address the remaining prongs of the test." **Commonwealth v. Fitzgerald**, 979 A.2d 908, 911 (Pa. Super. 2009).

## **Failure to Object During the Commonwealth's Closing Argument**

First, Appellant claims that counsel was ineffective for failing to object during closing arguments to the assistant district attorney's characterization of Appellant as a cold-blooded killer. Appellant's Brief at 8-9.

> The standard for granting a new trial because of the comments of a prosecutor is a high one. Generally, a prosecutor's arguments to the jury are not a basis for the granting of a new trial unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility towards the accused which would prevent them from properly weighing the evidence and rendering a true verdict. This standard permits us to grant a new trial based on the comments of a prosecutor only if the unavoidable effect of the comments prevented the jury from considering the evidence. A prosecutor must have reasonable latitude in fairly presenting a case to the jury and must be free to present his or her arguments with logical force and vigor.

**Commonwealth v. Ogrod**, 839 A.2d 294, 333-34 (Pa. 2003) (citations and quotation marks omitted).

At the beginning of her closing argument, the assistant district attorney described appellant as a "cold-blooded killer," stating, "ladies and gentlemen of the jury, you have to ask yourself what kind of person can stab another human being 72 times and then dismember his body with a saw and snap his bones and then throw away his body like a piece of trash[?]" N.T., 3/13-15/2012, at 431. She later argued to the jury that Appellant's actions immediately following the victim's death, including playing with his children, evidenced a lack of remorse stating, "I submit […] he is a cold-blooded person who enjoyed what he did after he killed [the victim]. " *Id.* at 436.

While Appellant's discussion of this issue pays lip service to the test for ineffective assistance of counsel outlined above, he fails to develop his argument, or establish that he was prejudiced. Appellant fails to specify which statement he believes to be objectionable. The substance of his argument is as follows: "[t]he reference to [Appellant] as a cold blooded killer was undesirable when made by the witness. For the prosecutor to refer to it in [her] closing and quote it verbatim rises to the level of misconduct." Appellant's Brief at 8. While he claims that the district attorney is quoting verbatim "the witness," he fails to identify which witness[3] made the original statement, cite to the comment in the certified record, or identify where in the record his objection to the comment by the unidentified witness is preserved. *See Commonwealth v. Renchenski*, 988 A.2d 699, 703 (Pa.

---

[3] The certified record indicates there were 19 witnesses called throughout the course of the three day long trial.

Super. 2010); **_Commonwealth v. Beshore_**, 916 A.2d 1128, 1140 (Pa. Super. 2007) (noting that this Court will not develop an argument for an appellant and that the failure to develop adequately an argument in an appellate brief may result in waiver of the claim under Pa.R.A.P. 2119). Moreover, it is well-established that "prosecutorial misconduct … will not be found where comments were based on evidence or proper inferences therefrom or were only oratorical flair." **_Commonwealth v. DeJesus_**, 787 A.2d 394, 408 (Pa. 2001). Appellant's challenge to the inference drawn by the prosecutor, which is based on evidence presented at trial, is without merit.

**Failure to Prepare Appellant to Testify**

Appellant next claims that trial counsel was ineffective for failing to prepare him to testify properly. Appellant's Brief at 10-11. As the Commonwealth aptly notes, Appellant's argument on this point "consists of citation to a series of cases dealing with situations in which counsel was deemed unprepared for trial, a misstatement of the procedural history of the case, and a discussion of other alleged failures (_i.e._, failure to present character witnesses), but contains nothing specifically aimed at illustrating what [A]ppellant might have said differently in his testimony had he been more thoroughly prepared by counsel." Commonwealth's Brief at 20. Because Appellant fails to address meaningfully each of the three prongs

necessary to establish ineffective assistance of counsel, we find he has waived this claim. **See Commonwealth v. Steele**, 961 A.2d 786, 797 (Pa. 2008) ("[W]here Appellant has failed to set forth all three prongs of the ineffectiveness test and meaningfully discuss them, he is not entitled to relief, and we are constrained to find such claims waived for lack of development.").

## Failure to Object to the Admission of Martial Arts Items

Appellant claims that trial counsel was ineffective for failing to object to the introduction of martial arts books and weapons seized during a search of his apartment. Appellant's Brief at 12. Appellant argues that the sole purpose of this evidence was to establish his propensity for violence. **Id.** Moreover, Appellant contends that, because the victim was stabbed inside Appellant's car, and no martial arts weapons were used, the evidence was irrelevant. Contrary to these arguments, a review of the record makes clear that the evidence was introduced to rebut Appellant's claim that he killed the victim in self-defense.

Instantly, the Commonwealth, through witness Corey Robert, offered testimony that Appellant killed the victim in Appellant's car, which was parked in front of Appellant's apartment, with a knife that Appellant had hidden beside the driver's side door. N.T., 3/13-15/2012, at 164, 179, 196. To the contrary, Appellant asserted that he stabbed the victim in self-

defense after the victim attacked him with a knife while both men were in Appellant's car. *Id.* at 387-88. Appellant testified that he was able to disarm the victim using martial arts techniques. *Id.* Once in possession of the victim's knife, Appellant pinned the victim between the front seats of the car and began stabbing him in the neck and back. *Id.* at 387-389. Appellant explained that he had stabbed the victim multiple times out of panic and fear for his life. *Id.* On cross-examination, Appellant reiterated that the victim attacked him with a knife, which "showed … intent to kill" and he protected himself accordingly. *Id.* at 399.

"If a defendant introduces evidence of self-defense, the Commonwealth bears the burden of disproving the self-defense claim beyond a reasonable doubt." ***Commonwealth v. Rivera***, 983 A.2d 1211, 1221 (Pa. 2009). The martial arts materials introduced at trial were relevant to rebut Appellant's claims that he stabbed the victim in self-defense, he was in fear for his life, and that he was justified to act with deadly force. Accordingly, this claim is without merit, and affords Appellant no relief. ***See Commonwealth v. Spotz***, 896 A.2d 1191, 1210 (Pa. 2006) ("Counsel will not be deemed ineffective for failing to raise a meritless claim.")

**Failure to Sever the Charges**

Appellant next claims that counsel was ineffective for not moving to sever the charge of criminal homicide from the charge of abuse of a corpse.

Appellant's Brief at 13-14. While Appellant quotes the relevant test for determining whether a court should grant a motion to sever, Appellant fails to apply this test to the charges at issue. Instead, he makes a bald allegation of prejudice and directs this Court to "See aforecited cases which clearly supports [*sic*] [Appellant's] contention that he would be entitled to a new trial/evidentiary hearing. [*sic*] on this issue." Appellant's Brief at 14. As noted above, we will not develop Appellant's argument for him. **Beshore**, 916 A.2d at 1140. Accordingly, the claim is waived.[4]

**Failure to Call Certain Fact and Character Witnesses**

Appellant claims that trial counsel was ineffective for failing to "call good character witnesses," and various factual witnesses. Appellant's Brief at 14. With respect to the failure to call character witnesses, we observe the following.

> As a general rule, evidence of a person's character may not be admitted to show that individual acted in conformity with that character on a particular occasion. Pa.R.E. 404(a). However, Pennsylvania Rule of Evidence 404(a)(1) provides an exception which allows a criminal defendant to offer evidence of his or her character traits which are pertinent to the crimes charged and allows the Commonwealth to rebut the same. Pa.R.E. 404(a)(1). This Court has further explained the limited purpose for which this evidence can be offered:
>
> > It has long been the law in Pennsylvania that an individual on trial for an offense against the

---

[4] Moreover, Appellant fails to analyze this issue within the framework outlined by **Pierce**, **supra**.

criminal law is permitted to introduce evidence of his good reputation in any respect which has "proper relation to the subject matter" of the charge at issue. Such evidence has been allowed on a theory that general reputation reflects the character of the individual and a defendant in a criminal case is permitted to prove his good character in order to negate his participation in the offense charged. The rationale for the admission of character testimony is that an accused may not be able to produce any other evidence to exculpate himself from the charge he faces except his own oath and evidence of good character.

It is clearly established that evidence of good character is to be regarded as evidence of substantive fact just as any other evidence tending to establish innocence and may be considered by the jury in connection with all of the evidence presented in the case on the general issue of guilt or innocence. Evidence of good character is substantive and positive evidence, not a mere make weight to be considered in a doubtful case, and, ... is an independent factor which may of itself engender reasonable doubt or produce a conclusion of innocence. **Evidence of good character offered by a defendant in a criminal prosecution must be limited to his *general reputation for the particular trait or traits of character involved in the commission of the crime charged***. The cross-examination of such witnesses by the Commonwealth must be limited to the same traits. Such evidence must relate to a period at or about the time the offense was committed, and **must be established by testimony of witnesses as to the *community opinion* of the individual in question, *not through specific acts* or mere rumor**.

*Commonwealth v. Johnson*, 27 A.3d 244, 247-48 (Pa. Super. 2011)

(citing *Commonwealth v. Luther*, 463 A.2d 1073, 1077–78 (Pa. Super.

1983) (citations omitted; emphasis added)).

When an appellant claims counsel was ineffective for failing to call character witnesses, the appellant must demonstrate that witnesses existed, they were available and willing to testify on his behalf at the trial, his counsel had an awareness of, or a duty to know of, the witnesses, and their proposed testimony was necessary to avoid prejudice. ***Commonwealth v. Copenhefer***, 719 A.2d 242, 254 (Pa. 1998). It is well-established that "[f]ailure to present available character witnesses may constitute ineffective assistance of counsel." ***Commonwealth v. Harris***, 785 A.2d 998, 1000 (Pa. Super. 2001).

Attached to his PCRA petition are three identical affidavits, all of which verify that each potential witness 1) was aware of Appellant's reputation in the community as "peaceful, honest and law abiding," 2) was available to testify at trial, and 3) was never called to do so by trial counsel. Attachments to PCRA Petition, 7/18/2014. However, Appellant failed to present to the PCRA court, or this Court, anything that demonstrates that trial counsel was aware of these particular witnesses at the time of trial, or should have been aware of them. Because he has failed to meet his burden under ***Copenhefer***, his claim must fail.[5]

---

[5] In his brief, Appellant claims that the Commonwealth concedes he is entitled to an evidentiary hearing on the issue of character witnesses. Appellant's Brief at 14. That concession is not included in the Commonwealth's brief; however, the Commonwealth did note in its answer to Appellant's PCRA petition that, while Appellant's PCRA claims fail, "an evidentiary hearing is necessary in order to create a record" regarding Appellant's proposed character witnesses. Commonwealth's Answer,

Appellant also claims that trial counsel was ineffective for failing to call factual witnesses Armond Bergamasco, Cydney DeDominicis, and Sarah Mattern.[6] Appellant's Brief at 21-22. Similar to the above, "[w]hen raising a failure to call a potential witness claim, the PCRA petitioner satisfies the performance and prejudice requirements of the [*Pierce*] test by establishing that:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Washington*, 927 A.2d 586, 599 (Pa. 2007). To demonstrate prejudice, the PCRA petitioner "must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case." *Commonwealth v. Johnson*, 966 A.2d 523, 536 (Pa. 2009) (citation omitted); *see also Commonwealth v. Chmiel*, 889 A.2d 501, 546 (Pa. 2005) ("Trial counsel's failure to call a particular witness does not constitute ineffective assistance without some showing that the absent

---

1/15/2015, at 4. However, because Appellant has failed to meet his burden under *Pierce* and *Copenhefer*, we find no abuse of discretion in the trial court's decision to deny Appellant an evidentiary hearing.

[6] In his PCRA petition, Appellant argues that counsel was ineffective for failing to call a number of other named witnesses; however, he has abandoned those claims by failing to argue them on appeal to this Court.

witness' testimony would have been beneficial or helpful in establishing the asserted defense.").

In his affidavit attached to Appellant's PCRA petition, Bergamasco, Appellant's mechanic, avers that he was interviewed by trial counsel's investigator regarding a defective automatic unlocking mechanism on Appellant's car door. Specifically, Bergamasco would have testified that Appellant's vehicle was equipped with a safety feature whereby the doors automatically unlocked when the vehicle was shifted into "park". Attachment to PCRA Petition, 7/18/2014. This feature was not working at the time of the incident, meaning that Appellant's car doors had to be unlocked manually. *Id.* Appellant contends that this evidence was relevant to support his claim of self-defense because Bergamasco would have testified that "at the time of the incident the locks were broken and [Appellant] would have been locked in the car and unable to get out." Appellant's Brief at 21.

Appellant mischaracterizes the substance of Bergamasco's affidavit. The nature of the problem, according to Bergamasco, was not that the doors did not open, but that they had to be manually unlocked when the vehicle was in "park." Thus, contrary to Appellant's argument on appeal, Bergamasco's proposed testimony leaves open the possibility that Appellant (and the victim, for that matter) could have exited the vehicle at any point

during the verbal altercation, regardless of the vehicle's allegedly inoperative safety feature.

Moreover, at trial, Appellant testified that the incident escalated after he pulled over on the side of the road and "made the attempt to kick [the victim] out of [his] car." N.T., 3/13-15/2012, at 399. Appellant testified that the previous verbal altercation turned physical when the victim attacked him with a knife. He was able to disarm the victim and gain control of the knife, after which he stabbed the victim to death. All of this occurred within Appellant's car. Appellant justified stabbing the victim after disarming him, stating that he was "trapped in the car" with the victim, but never mentioned the faulty unlocking mechanism. *Id.* at 385. Based on the foregoing, Appellant has failed to convince us that the absence of Bergamasco's testimony was prejudicial under *Pierce*.[7]

Appellant next claims that counsel was ineffective for failing to call DeDominicis, who would have testified that the Commonwealth's key witness, Corey Robert, had a reputation for being untruthful. Appellant's Brief at 21-22. However, similar to our analysis of the potential character witnesses above, neither DeDominicis' statement nor Appellant's PCRA petition set forth evidence to demonstrate that trial counsel knew or should

---

[7] Appellant's argument on this claim focuses solely on his averment that counsel failed to investigate Bergamasco at all. Appellant's Brief at 21. This claim is belied by Bergamasco's own affidavit, wherein he states that he was interviewed about the faulty unlocking mechanism prior to trial by trial counsel's investigator.

have known of this witness, or the substance of her testimony. Accordingly, Appellant's claim fails. **Washington**, 927 A.2d at 599.[8]

Finally, although he mentions her name, Appellant makes no attempt to apply the tests in **Pierce** or **Washington** to the potential testimony of Sarah Mattern. Appellant's entire argument on this point is contained in a paragraph of seemingly extra arguments: "[t]rial counsel was ineffective for the following : … not calling to the witness stand Sarah Mattern who would have testified she bandaged [Appellant's] hands after the killing but before the removal of the deceased body from the basement." Appellant's Brief at 22. In light of Appellant's complete lack of effort to argue this point properly, his claim fails.[9]

---

[8] In any event, DeDominicis' proffered testimony is inadmissible. While Appellant contends that DeDominicis would have testified that Corey Robert had a reputation for being untruthful, the substance of her affidavit demonstrates that she would offer only specific instances of Robert's prior conduct, which is inadmissible for impeachment purposes. **See** Pa.R.E. 608; **Commonwealth v. Hanible**, 30 A.3d 426 (Pa. 2011) (holding that there was no arguable merit to Hanible's position that trial counsel was ineffective in failing to call various witnesses to impeach the veracity of the Commonwealth's key witness where the declarations contained in the character witnesses' proffered affidavits primarily addressed specific instances of key witness's conduct, *i.e.*, her specific acts of violence, threats of violence, or deception, which would have been inadmissible to attack her credibility under Pa.R.E. 608, which prohibits attack or support of the character of a witness for truthfulness through extrinsic evidence concerning specific instances of the witness's conduct.)

[9] As discussed in more detail *infra*, even if Appellant had developed properly his claim with respect to Mattern, her testimony (that she placed a Band-Aid on Appellant's hand at some point following the killing) is arguably cumulative of that offered by Sergeant Hudek's testimony, and also less

## **Failure to Present Evidence of Appellant's Defensive Wounds**

Comingled with the Sarah Mattern argument are two other arguments regarding trial counsel's failure to present evidence of Appellant's defensive wounds. Appellant's Brief at 22-23. Appellant contends that counsel was ineffective for failing to recall Sergeant Michael Hudek to testify as to Appellant's defensive wounds, and was ineffective for failing to show photographs of those injuries to the jury. *Id.* However, both Appellant's sister and Sergeant Hudek testified to the presence of injuries to Appellant's hands following the incident. N.T., 3/12-15/2012, at 93-95, 124-27. In particular, Sergeant Hudek testified that he observed a three-inch-long cut on the webbing between the thumb and forefinger of Appellant's right hand, along with a Band-Aid on his right pinky; an open cut on the left side of his right pinky; a half-dollar-sized bruise on the back of his left forearm; and a superficial cut on the back of his neck. *Id.* at 126-27. Trial counsel cross-examined Sergeant Hudek with respect to those injuries, inquiring if they were "consistent with a struggle." *Id.* at 138-141. Accordingly, as counsel thoroughly cross-examined the sergeant on this point, we are not convinced that Appellant was prejudiced by counsel's failure to recall the witness to belabor these points.

---

helpful, as her description of Appellant's wounds is less extensive than that testified to by Sergeant Hudek. Accordingly, these claims fail.

Moreover, there is no indication, either in Appellant's brief or in the PCRA petition, that photographs of Appellant's purported injuries actually existed, or that counsel was aware of them. Accordingly, this claim also fails.

## Violation of Right to Public Trial

Appellant next claims that "[t]rial counsel was ineffective for informing [Appellant's] family that they could not attend jury selection, thus denying [Appellant] his Sixth Amendment right to a public trial." Appellant's Brief at 16. In addressing this issue, the trial court aptly noted that Appellant's PCRA petition offered "no evidence that trial counsel told anyone they [*sic*] could not attend jury selection, and more importantly the [trial court] did not exclude anyone from the courtroom or from the jury selection process." Trial Court Opinion, 3/9/2015, at 4 (unnumbered). Appellant argues that the trial court's observation is "factually inaccurate," claiming "there are several affidavits in the record attesting to the fact that trial counsel told them they could not attend jury selection." Appellant's Brief at 17. Unfortunately for Appellant, it is he who has misapprehended the record. The eight witness affidavits attached to Appellant's PCRA petition make no mention of being excluded from jury selection by either trial counsel or the

trial court. Accordingly, Appellant has failed to meet his burden under **_Pierce_**.[10]

Having evaluated each of Appellant's substantive issues, and finding none that merits him relief, we find no error in the trial court's decision to deny him an evidentiary hearing. Accordingly, we affirm the trial court's order.

Order affirmed.

---

[10] Appellant purports to rely on **_Commonwealth v. Rega_**, 70 A.3d 777 (Pa. 2013), for his argument that exclusion from jury selection is a "structural error" for which no **_Pierce_** elements must be discussed. Appellant's Brief at 18-20. However, having read the entirety of that decision, we direct him to the following passage:

> Consistent with [Rega's] arguments, various courts have found a violation of the right to a public trial to be in the nature of a structural error. It is well recognized, however, that such violation is a particular type of structural error which is waivable. Since [Rega] did not object to the after-hours courtroom arrangements, the only cognizable aspect of his claim is that of deficient stewardship, **as to which he must establish prejudice**.

**_Rega_**, 70 A.3d at 786-87 (citations omitted; emphasis added). In his brief, Appellant argues that prejudice is "presumed" in this situation. Appellant's Brief at 20. Clearly, Appellant is mistaken. As Appellant has established neither arguable merit nor prejudice, his claim must fail.

J-S55040-15

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/14/2015