J. S91002/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| LEON D. BODLE, | : | No. 354 MDA 2016 |
| | : | |
| Appellant | : | |

Appeal from the PCRA Order, February 18, 2016,
in the Court of Common Pleas of Lycoming County
Criminal Division at No. CP-41-CR-0000743-2009

BEFORE:  FORD ELLIOTT, P.J.E., RANSOM, J. AND STEVENS, P.J.E.*

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED FEBRUARY 08, 2017**

Leon D. Bodle appeals from the February 18, 2016 order dismissing his

petition for relief filed pursuant to the Post-Conviction Relief Act ("PCRA"),

42 Pa.C.S.A. §§ 9541-9546.  After careful review, we affirm.[1]

A prior panel of this court summarized the relevant facts and

procedural history of this case as follows:

> The police began investigating [a]ppellant
> when the parents of an eleven year old girl informed
> them that [a]ppellant, who had been the girl's
> substitute teacher in the past, began sending her
> instant messages that the parents believed were
> inappropriate.   No charges were filed against
> [a]ppellant stemming from his contact with this
> eleven year old girl; however, the police spoke to
> other female students and former students of

---

* Former Justice specially assigned to the Superior Court.

[1] The Commonwealth has not filed a brief in this matter.

[a]ppellant about his interactions with them. The police also interviewed [a]ppellant and seized two computers that he used. On the computers, the police discovered numerous images of child pornography. As a result of the investigation by the police, the Commonwealth filed an Information charging [a]ppellant with solicitation of involuntary deviate sexual intercourse with a child less than 16 years old, unlawful communication with a minor, two counts of disseminating explicit sexual materials to a minor, twenty seven counts of sexual abuse of children related to possession of child pornography, four counts of criminal use of communications facility, and six counts of corruption of a minor.

A jury trial was held March 2-4, 2010.[2] The jury found [a]ppellant guilty of all of the charges except two counts of sexual abuse of children (Counts 9 and 18) and one count of corruption of a minor.

*Commonwealth v. Bodle*, 32 A.3d 286 (Pa.Super. 2011), *appeal denied*, 65 A.3d 412 (Pa. 2013) (unpublished memorandum at 1-2).

On June 29, 2010, the trial court conducted a hearing and concluded that appellant was a sexually violent predator. That same day, the trial court sentenced appellant to an aggregate term of 10 to 20 years' imprisonment, followed by 10 years' probation. On July 29, 2011, a panel of this court affirmed the judgment of sentence, and our supreme court denied appellant's petition for allowance of appeal on April 24, 2013. *Id.* On May 29, 2013, appellant filed a timely *pro se* PCRA petition, and Donald F. Martino, Esq. ("Attorney Martino") was appointed to represent him. On

---

[2] Appellant was represented at trial by James R. Protasio, Esq. ("trial counsel").

October 31, 2013, Attorney Martino filed an amended PCRA petition on appellant's behalf. Thereafter, on May 14, 2014, the PCRA court provided appellant with notice, pursuant to Pa.R.Crim.P. 907(1), of its intention to dismiss his petition without a hearing. Appellant did not respond, and on June 24, 2014, the PCRA court dismissed appellant's petition without a hearing. On July 9, 2014, appellant filed a timely notice of appeal. On March 24, 2015, a panel of this court vacated the PCRA court's June 24, 2014 order and remanded this matter for an evidentiary hearing on trial counsel's decision not to (i) call character witnesses on appellant's behalf, nor (ii) subpoena the telephone and school disciplinary records of one of the victims, J.E. *See Commonwealth v. Bodle*, 120 A.3d 1062 (Pa.Super. 2015) (unpublished memorandum at 9-10, 13).

On July 6 and 7, 2015, the PCRA court conducted an evidentiary hearing on this matter. Thereafter, on February 18, 2016, the PCRA court filed an opinion and order denying appellant's PCRA petition. On March 2, 2016, appellant filed a timely notice of appeal. The following day, the trial court directed appellant to file a concise statement of errors complained of on appeal, in accordance with Pa.R.A.P. 1925(b). On March 16, 2016, appellant filed a timely Rule 1925(b) statement, and the trial court issued its Rule 1925(a) opinion on August 31, 2016.

Appellant raises the following issues for our review:

> A. [WHETHER] THE TRIAL COURT ERRED BY FAILING TO GRANT APPELLANT A NEW TRIAL

DUE TO TRIAL COUNSEL'S FAILURE TO CALL CHARACTER WITNESSES ON APPELLANT'S BEHALF AND TO EMPHASIZE THE IMPORTANCE OF CALLING CHARACTER WITNESSES WITH APPELLANT[?]

B. [WHETHER] THE TRIAL COURT ERRED BY FAILING TO GRANT APPELLANT A NEW TRIAL DUE TO TRIAL COUNSEL'S FAILURE TO SUBPOENA PHONE RECORDS FROM COMMONWEALTH WITNESS J.E.'S HOME TO DEMONSTRATE APPELLANT DID NOT CALL HER AND FOR FAILING TO SUBPOENA DISCIPLINARY RECORDS FOR WITNESS J.E. FROM THE SUGAR VALLEY CHARACTER SCHOOL[?]

Appellant's brief at 4.

Proper appellate review of a PCRA court's dismissal of a PCRA petition is limited to the examination of "whether the PCRA court's determination is supported by the record and free of legal error." *Commonwealth v. Miller*, 102 A.3d 988, 992 (Pa.Super. 2014) (citation omitted). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Lawson*, 90 A.3d 1, 4 (Pa.Super. 2014) (citations omitted). "This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding." *Commonwealth v. Hickman*, 799 A.2d 136, 140 (Pa.Super. 2002) (citation omitted). In order to be eligible for PCRA relief, a defendant must plead and prove by a preponderance of the evidence that his conviction or sentence arose from one or more of the errors listed at 42 Pa.C.S.A. § 9543(a)(2). Further,

these issues must be neither previously litigated nor waived. 42 Pa.C.S.A. § 9543(a)(3).

Instantly, both of appellant's claims challenge the effectiveness of trial counsel. To prevail on a claim of ineffective assistance of counsel under the PCRA, a petitioner must plead and prove by a preponderance of the evidence that counsel's ineffectiveness "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii). Specifically, a petitioner must establish that "the underlying claim has arguable merit; second, that counsel had no reasonable basis for his action or inaction; and third, that Appellant was prejudiced." *Commonwealth v. Charleston*, 94 A.3d 1012, 1020 (Pa.Super. 2014), *appeal denied*, 104 A.3d 523 (Pa. 2014) (citation omitted). "[C]ounsel is presumed to be effective and the burden of demonstrating ineffectiveness rests on appellant." *Commonwealth v. Ousley*, 21 A.3d 1238, 1242 (Pa.Super. 2011), *appeal denied*, 30 A.3d 487 (Pa. 2011) (citation omitted). Additionally, we note that "counsel cannot be held ineffective for failing to pursue a meritless claim[.]" *Commonwealth v. Hall*, 867 A.2d 619, 632 (Pa.Super. 2005), *appeal denied*, 895 A.2d 549 (Pa. 2006).

Appellant first argues that trial counsel was ineffective in failing to call his uncle, Ronald Weigle (hereinafter, "Weigle"), and his mother,

Karen Bodle (hereinafter, "Bodle"), as character witnesses on his behalf. (Appellant's brief at 10.) We disagree.

It is well settled that "[a] failure to call a witness is not **per se** ineffective assistance of counsel for such decision usually involves matters of trial strategy." **Commonwealth v. Sneed**, 45 A.3d 1096, 1109 (Pa. 2012) (citation omitted); **see also Commonwealth v. Poindexter**, 646 A.2d 1211, 1217 (Pa.Super. 1994), **appeal denied**, 655 A.2d 512 (Pa. 2005) (stating, "The failure to call a possible witness will not be equated with a conclusion of ineffectiveness, absent some positive demonstration that the testimony would have been helpful to the defense." (citation omitted)).

> It has long been the law in Pennsylvania that an individual on trial for an offense against the criminal law is permitted to introduce evidence of his good reputation in any respect which has "proper relation to the subject matter" of the charge at issue. Such evidence has been allowed on a theory that general reputation reflects the character of the individual and a defendant in a criminal case is permitted to prove his good character in order to negate his participation in the offense charged. The rationale for the admission of character testimony is that an accused may not be able to produce any other evidence to exculpate himself from the charge he faces except his own oath and evidence of good character.
>
> . . . .
>
> Evidence of good character offered by a defendant in a criminal prosecution must be limited to his general reputation for the particular trait or traits of character involved in the commission of the crime charged. The cross-examination of such witnesses by the Commonwealth must be limited to

> the same traits. Such evidence must relate to a period at or about the time the offense was committed, and must be established by testimony of witnesses as to the community opinion of the individual in question, not through specific acts or mere rumor.

*Commonwealth v. Johnson*, 27 A.3d 244, 248 (Pa.Super. 2011) (citation and emphasis omitted).

In order to make a claim of ineffectiveness for failure to investigate or present a witness, an appellant must demonstrate that:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Sneed*, 45 A.3d at 1109 (citations omitted). "A petitioner establishes prejudice when he demonstrates that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Commonwealth v. Johnson*, 966 A.2d 523, 533 (Pa. 2009) (citations and internal quotation marks omitted).

At the July 6, 2015 evidentiary hearing, both Bodle and Weigle testified that they would have been willing to testify on appellant's behalf had they been asked by trial counsel. (Notes of testimony, 7/6/15 at 61, 85-88.) Trial counsel acknowledged that he discussed with appellant the possibility of calling Bodle and appellant's neighbors as possible character witnesses, but does not recall appellant ever mentioning Weigle. (*Id.* at

20.) Trial counsel noted that he directed his investigator to contact two of appellant's neighbors, but elected not to call them on appellant's behalf because they did not say anything positive about appellant. (*Id.* at 20-21.) Trial counsel also testified that he did not think that Weigle was qualified to testify about appellant's reputation in the community because Weigle did not reside in the same neighborhood as appellant and did not think that "the people in his uncle's neighborhood would have known [appellant] enough to say what his character was." (*Id.*)[3] Trial counsel further opined that he had a reasonable strategic basis for electing not to call Bodle as a character witness, stating as follows:

> Basically what I asked [Bodle] was what was [appellant's] reputation in the community, you know, what did the people in the neighborhood or people who knew him, what were they saying about him. And she basically described him as a person who was kind of a home body, didn't really have a whole lot of contact with the neighbors. And quite, frankly, she didn't know what his reputation was.

> My belief was that she would not have been qualified as somebody who could speak on his character because the description and the answers she gave me that the neighbors didn't have a whole lot of interaction with [appellant], that he spent most of his time at home.

---

[3] It is clear from the PCRA court's analysis that it recognized that a character witness need not be from the same neighborhood as a defendant in order to testify about his reputation. Nonetheless, as discussed *infra*, the PCRA court found that Weigle's testimony constituted a personal opinion of appellant and did not go to appellant's reputation for truthfulness in the community. (*See* PCRA court opinion, 2/18/16 at 10.)

And based on that, and also based on what the investigator had given me, I didn't believe that she would even qualify as somebody who could, you know, describe his character, other than her personal feelings.

*Id.* at 21-22.

In rejecting appellant's ineffective assistance of counsel claim, the PCRA court concluded that "[appellant] has failed to satisfy his burden of proof to show that counsel was aware or should have known that his uncle Ronald Weigle could testify about [appellant's] reputation in the community for truthfulness or appropriate behavior around children." (PCRA court opinion, 2/18/16, at 9-10.) In support of this conclusion, the trial court noted that "[Weigle's] testimony was not reputation evidence but rather his personal opinion and the personal opinion of one of [appellant's] friends." (*Id.* at 10.) The PCRA court also found that "[appellant] failed to satisfy his burden of proof to show that counsel was ineffective for failing to call [his] mother as a character witness[,]" given that her testimony "was predominantly her personal opinion regarding her son's innocence" and not credible. (*Id.*)

Based on the foregoing, we agree with the PCRA court that trial counsel clearly had a reasonable strategic basis for electing not to call Weigle and Bodle on appellant's behalf. Appellant failed to demonstrate a reasonable probability that the outcome of his trial would have been different had either of these proffered character witnesses testified. ***See***

***Johnson***, 966 A.2d at 533.  Accordingly, appellant's ineffectiveness claim must fail.

Appellant also argues that trial counsel was ineffective in failing to emphasize to him "the importance of calling character witnesses." (Appellant's brief at 10.)  This claim is belied by the record.

As noted, trial counsel testified that he met with appellant multiple times prior to trial and discussed calling several character witnesses, including his mother and his neighbors.  (Notes of testimony, 7/6/15 at 20.) Trial counsel also specifically noted that he does not "discourage the use of character witnesses if the client has them and wants to use them[,]" but did not think Bodle or Weigle were qualified in this instance.  (***Id.*** at 20, 24-25.) Appellant, on the contrary, testified that he only met with trial counsel three or four times prior to trial and that trial counsel informed him he did not think character witnesses were "necessary" and dismissed his request. (Notes of testimony, 7/7/15 at 5-6.)  Appellant further testified that trial counsel specifically ignored his instruction to ask Bodle about his character. (***Id.*** at 7.)  The PCRA court specifically found appellant's testimony during the hearing lacked credibility, and we decline to disturb this determination on appeal.  (PCRA court opinion, 2/18/16 at 10-11.)  ***See Commonwealth v. Spotz***, 84 A.3d 294, 312 (Pa. 2014) (stating, "The findings of a post-conviction court, which hears evidence and passes on the credibility of witnesses, should be given great deference." (citation omitted)).

Appellant next argues that trial counsel was ineffective in failing to subpoena the home telephone and school disciplinary records of Commonwealth witness J.E. in order to investigate whether her testimony could be impeached at trial. (Appellant's brief at 17.)

J.E. was one of numerous victims called by the Commonwealth to testify against appellant. Specifically, J.E. testified that appellant was a substitute teacher while she was in seventh grade and he telephoned her house multiple times, inquiring into her homework, inviting her to an amusement park, and asking her to go on a date. (Notes of testimony, 3/2/2010 at 104-107.) J.E. further testified that on one of these occasions, appellant invited her to his house to "hang out with him" and "have sex with him and suck his d\*\*k and everything." (*Id.* at 106.)

It is well settled that "trial counsel has a general duty to undertake reasonable investigations or make reasonable decisions which render particular investigations unnecessary." *Commonwealth v. Mitchell*, 105 A.3d 1257, 1276 (Pa. 2014) (citation omitted). Nevertheless, "where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests." *Commonwealth v. Hammond*, 953 A.2d 544, 558 (Pa.Super. 2008), *appeal denied*, 964 A.2d 894 (Pa. 2009) (citations omitted).

Upon review, we discern no error on the part of the PCRA court in concluding that trial counsel had a reasonable strategic basis for electing not to request the records in question. Trial counsel testified that although he could not specifically recall whether he obtained the records in question, he believed that his investigator attempted to do so but was unsuccessful. (Notes of testimony, 7/6/15 at 30-31, 33-34.) Trial counsel further opined that, in any event, the introduction of the aforementioned telephone records into evidence very well may have been harmful to appellant's case.

> [Attorney Martino:] Okay. If you had physical evidence to suggest that those phone calls were never made, that would have helped your defense, correct?
>
> . . . .
>
> [Trial Counsel:] It cuts both ways. If the phone records would have came [sic] back and substantiated what she said it would have been harmful to us.
>
> [Attorney Martino:] Well, if you get that you don't have to turn them over, correct?
>
> [Trial Counsel:] That's correct. But, you know, by the same token, too, I wouldn't be able to put somebody on the stand and try and make a denial of that knowing full well that that was false. So obviously it would have been harmful if they would come back and indicated that they had occurred. It would have been helpful if they would have come back and indicated that no phone calls were made.
>
> [Attorney Martino:] Okay.
>
> [Trial Counsel:] And that would require though that [appellant] had used a phone. For example, his

house phone. Whether he made a phone call from some other place, we may not have known whether that phone was the number.

So again, that was one of the problems that we would have had is that the prosecution could have said, well, you've got some numbers here; but he called from these numbers, whose numbers are they.

. . . .

If there were phone numbers to [J.E.'s] residence that we couldn't account for[,] it could be argued that maybe he called from a pay phone or maybe somebody else's, maybe his brother's home, or that he called on a cell phone.

So, I mean, I explained I think, you know, or I would have been aware of the problem in that just having the phone records and showing that his home phone number wasn't there didn't automatically preclude that he didn't make the calls because the Commonwealth could argue he might have used a cell phone, he might have used somebody else's phone, to make those calls.

*Id.* at 31-33.

Trial counsel also indicated at the evidentiary hearing that he discussed the issue of introducing J.E.'s school disciplinary records with appellant and concluded that it would not be beneficial to his case.

[Commonwealth:] Do you recall indicating that you believed – at one point to someone that you believed you had seen or talked to people about the school records; and they did not support [appellant's] contention about making false reports?

[Trial Counsel:] Well, I know that I discussed with [appellant] one of the problems we had with the school disciplinary thing was that, first of all, would

- 13 -

explain maybe why one of the girls might have a vendetta against him and might make something up; but it was also somewhat corroborated by his own statements and also by the fact that there were computer print-outs showing that he had contact with her. But it wouldn't explain the other girls, why they would be making up these allegations.

Additionally, my recollection was that this wasn't . . . a major infraction or something. So it would be difficult, I think, to convince a jury without something else, maybe her making threats of I'll get you for this or something, that she was looking to get revenge and would be making all these stories up.

. . . .

[Commonwealth:] And, again, by vendetta, did you believe that it would be nitpicking or grasping at straws?

[Trial Counsel:] Yeah, that was one of the concerns that I had. And I explained to him that it would be perceived as nitpicking and pretty much, you know, trying to bad mouth the victim with something that isn't really relevant.

. . . .

Any time you have a sexual-assault-type case or anything like this case where it wasn't sexual assault but there were inappropriate things towards minors you always have to walk that tight rope.

Notes of testimony, 7/6/15 at 40-42. Additionally, Logan D. Coney, the CEO of the Sugar Valley Rural Charter School, specifically noted that J.E. "was not deceitful" during her tenure at the school and that, contrary to appellant's assertion, there were not any disciplinary records that indicated

that she made false accusations or was reported by school personnel to have acted dishonestly.  (*Id.* at 12-13.)

Based on the foregoing, we agree that the introduction into evidence of J.E.'s telephone and school disciplinary records would not have aided appellant's defense.  Accordingly, trial counsel had a reasonable basis not to subpoena said records and appellant's ineffectiveness claim in this regard must fail.[4]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/8/2017

---

[4] We further note that appellant has also failed to demonstrate prejudice, given that Attorney Martino did not proffer these records at the PCRA hearing.  *See Johnson*, 966 A.2d at 533.