J-S40024-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LEONARD L. GLENDENNING | : | |
| | : | |
| Appellant | : | No. 69 WDA 2019 |

Appeal from the PCRA Order Entered December 19, 2018
In the Court of Common Pleas of Greene County Criminal Division at
No(s): CP-30-CR-0000312-2016

BEFORE:   BENDER, P.J.E., McLAUGHLIN, J., and PELLEGRINI*, J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED OCTOBER 29, 2019**

Leonard L. Glendenning appeals from the denial of his request for relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. Glendenning's PCRA petition asserted several claims that his trial counsel was ineffective. The PCRA court rejected those claims. We affirm.

A jury convicted Glendenning in March 2017 of numerous sex-related crimes against a minor victim: aggravated indecent assault – person less than 16 years of age; endangering the welfare of children; corruption of minors; and indecent assault – person less than 16 years of age.[1] The trial court sentenced Glendenning to two and one half to five years' incarceration, with credit for time served. Glendenning did not file a direct appeal.

---

*   Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3125(a)(8), 4304(a)(1), 6301(a)(1)(ii), and 3126(a)(8), respectively.

Rather, in September 2018, Glendenning filed the instant counseled and timely PCRA petition alleging trial counsel's ineffectiveness. The PCRA court held an evidentiary hearing at which Glendenning and his trial counsel, Harry J. Cancelmi, Esquire, testified.

Glendenning testified about his medical issues at the time of trial, including that he weighed at various times between 375 pounds and 651 pounds; he had 12 doctors; had had one surgery for a tumor in 2012 and another surgery in 2013; was hospitalized for hemorrhaging in 2015; had erectile dysfunction; and transitioned from using a wheelchair to a cane. **See** N.T., Evidentiary Hearing, 12/10/18, at 6-7, 11, 12-13. He stated that the tumor was 30 pounds and that at the time of the assault on the victim, it was "impossible" for him to have sex. **Id.** at 25. Glendenning also testified that at the time of the crime, he was taking multiple medications: "nerve block in the spinal cord, cortisone, steroids, Neurontin or Gabapentin, nerve relaxers, inhibitors, heart pills" and 200 units of insulin a day. **Id.** at 22. He claimed that because of all of his medical issues and weight, he was not physically capable of sexually assaulting the victim. **Id.**

Glendenning testified that he provided counsel with copies of his medical records, a list of 26 witnesses, and the names of his 12 doctors. **Id.** at 7-9. He said that he spoke about these witnesses with counsel "at least on one occasion." **Id.** at 10. He said Attorney Cancelmi nonetheless called none of his doctors to testify at trial, including the doctor who removed the tumor, or introduced any of his medical records into evidence. **Id.** at 21. Glendenning

also expressed his belief that the witnesses he identified for counsel could have testified that the victim had recanted:

> Q: Take a look at the list and have –
>
> A: [C.] would have been one, the four [R.] kids would have been major, primary, one of the girls, hold on, I'll think of her name, she changed her name, but it's [R.D.], she come and stayed with us, and you know, nothing has of happened.
>
> ***
>
> Q: Why was their testimony major, you used that term, why was their testimony major?
>
> A: [The victim] had went to their home and, you know, jealousy [sic] of me letting them [to] come to my home and not letting her come, she went down there and told them that we was in a relationship and it was all consensual, and she told [B.R.] about it and then turned around and I'm like, no, somebody is starting rumors and stuff, I don't want you here, I don't want [sic] in this position, and she went back and told them that she had lied on me.
>
> Q: So one or four of the [R.] children, however many there are, would have been able to testify that the victim had recanted?
>
> A: Correct.
>
> Q: Is that correct? Were any of the [R.] kids –
>
> A: None of them were called.
>
> Q: None of them were called. You had also indicated in here that there was a witness who was present at your home when the alleged travesty had been committed; who was that? Right here, that's what you indicate?
>
> A: That's [sic] the [R. children] were there.

*Id.* at 23-25.

Glendenning agreed, however, that Attorney Cancelmi had had an investigator interview the R. children:

- 3 -

Q[PCRA Counsel]: Wait, one more thing, since we were talking about the [R. children], do you know whether or not anybody questioned the [R.] kids?

A: Their brother, [J.] was at my house when I called home one day.

Q: My question was –

A: They were questioned by an investigator.

Q: Who was that investigator working for?

A: Harry.

*Id.* at 28. Although it appears that Glendenning was viewing the actual list of names he gave to counsel, the list was not admitted into evidence at the PCRA hearing and is not in the certified record. *See id.* at 23 (counsel telling Glendenning to "look at the list").

Glendenning also testified that counsel visited him "approximately" four times in prison in preparation for trial:

He come [sic] approximately I would say four times. The first two times we got interrupted and he left, and then he come [sic] – let's see, the trial was on Tuesday, I think, he come [sic] Sunday and said just tell me about your life growing up with my grandparents and stuff.

And then when he come Monday, the day before trial, he said that's what we want to hear. He said, I will lead you into information, other than saying, hey I grew up here with my grandparents, we helped everybody, that type of stuff, he didn't give me any other direction, and then I didn't even finish telling a few statements of what transpired the one day she is claiming because there were other people there that I was cut off and he never went back to that.

*Id.* at 14.

- 4 -

Regarding offers that counsel conveyed to him, Glendenning testified that he told counsel "I don't know what these offers mean," and that later during jury selection counsel informed him of the Commonwealth's most recent offer. *Id.* at 16-17, 18-19. He also testified that counsel did not prepare him to testify at trial. *Id.* at 20.

For his part, trial counsel testified that he met with Glendenning in prison and discussed the case with him. *Id.* at 37. He also testified that "we went through a list of numerous – a number of people that might possibly have some information that would be relevant or that might be helpful, yet." *Id.* at 38. He agreed that Glendenning "provided a little booklet of information and some – a list of medical providers and some medical records or at least discharge type papers." *Id.* at 37. Counsel also testified that he agreed that at trial "Mr. Glendenning did testify at length about his own medical history and medications and what was going on with him[.]" *Id.* at 40.

Regarding any evidence of Glendenning's impotence, counsel testified that "I never had one person who treated him that said at the time, . . . , that he was impotent or uninterested sexually because of his conditions. There was no one I could call to do that." *Id.* at 39. Counsel testified that Glendenning did not tell him that he was impotent but rather "said it would be physically impossible because of size, but not because of impotence. His weight was the issue, not his sexual ability or desire." *Id.* at 43. However, counsel also admitted that he did not speak with any of the doctors. *Id.* at 44.

Additionally, counsel testified that any plea offers from the Commonwealth were conveyed by counsel's secretary "who I believe spoke to Mr. Glendenning [at] various times[.]" *Id.* at 39.

Counsel then explained that he only called Glendenning's ex-wife as a defense witness because the other witnesses Glendenning had identified could only offer inadmissible character testimony:

> Q[PCRA Counsel]: . . . [W]hy is it out of these 26 witnesses available you only had Sharon Glendenning testify?
>
> A[Trial Counsel]: It's one thing to say that those things don't – never happened to my family or my children or my situation, it's another to say they were a witness to what might be alleged in this.
>
> Q: That was largely character testimony?
>
> A: It was largely character testimony, not character in the community testimony, it was specific to their experience with him. I think one of the witnesses left, I'm not sure if it was an emergency or something because they couldn't say [sic] for the remained of the proceeding, but even after the victim testified, I'm not sure – or the alleged victim at the time, I'm not sure if we would have called any of them to tell you the truth. I'm not sure I would have wanted to call any of them, I should say it that way.

*Id.* at 44-45 (emphasis added).

Regarding the testimony of the children, counsel testified that he sent an investigator to speak with them. *Id.* at 42. Counsel did not remember the investigator informing him that any of the witnesses discussed the victim's alleged recantation. Rather, the investigator reported that the witnesses had said that the victim was biased against Glendenning because he had thrown her out of his house. *Id.* at 42-43.

Following the hearing, the PCRA court denied this petition and this timely appeal followed.

Glendenning raises the following issues:

I.   Did [Glendenning's] prior counsel render ineffective assistance of counsel in the pre-trial and trial stages of this case in the following manner?

> a. Counsel failed to prepare for trial by not visiting [Glendenning] in the Greene County Jail to discuss the case, review substantive and substantial evidence, including significant levels of medication taken by the defendant daily, failed to review discovery with [Glendenning], inform [Glendenning] of offers from the District Attorney and failed to prepare him to testify in his own defense.
>
> b. Counsel failed to utilize certain medical evidence he had been provided that would have proven [Glendenning's] long-term impotence to counter prosecution evidence, raising the question as to his physical ability to commit these crimes and create reasonable doubt that [Glendenning] could have committed the acts he was accused of based upon [Glendenning's] enormous weight, high levels of medication and ability to function.
>
> c. Counsel failed to utilize the witnesses provided by [Glendenning] who could have impeached the alleged victim's testimony, including one who was present at [Glendenning's] home when the alleged crime was supposed to have been committed, how dependent he was on the extensive care he received from family members, failed to interview family members with extensive knowledge of the victim, and others that heard the victim recant her

- 7 -

statement that the alleged criminal action took place.

    d. Counsel failed to ask for photographic evidence and any medical evidence related to time lines to help exonerate [Glendenning].

    e. Counsel failed to subpoena defense witnesses, so when some of them left during the trial and/or failed to return, they had not been legally compelled to be at the trial and were unavailable to assist in the defense.

Glendenning's Br. at 3-4.

When reviewing the denial of PCRA relief, "we examine whether the PCRA court's determinations are supported by the record and are free of legal error." **Commonwealth v. Roney**, 79 A.3d 595, 603 (Pa. 2013). We are bound by the credibility determinations of the PCRA court and apply a *de novo* standard to its legal conclusions. **Id.**

When raising a claim of ineffective assistance of counsel, the petitioner must overcome the presumption that counsel is effective. **See Commonwealth v. Lesko**, 15 A.3d 345, 374 (Pa. 2011) (stating counsel is presumed effective). A petitioner overcomes this presumption by pleading and proving that: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice as a result of counsel's action or inaction. **Id.** at 373. Prejudice exists where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." **Commonwealth v. Burno**, 94 A.3d 956, 972 (Pa. 2014) (quoting

*Commonwealth v. King*, 57 A.3d 607, 613 (Pa. 2012)). The failure to establish just one prong requires rejection of the entire ineffectiveness claim. *Id.*

First, Glendenning argues that trial counsel was ineffective because of counsel's "utter failure to meet with [Glendenning] and discuss the merits of the case, witnesses to call at trial and available defenses." Glendenning's Br. at 11. He also alleges that counsel failed to inform him of plea offers from the Commonwealth. *Id.* at 3. The record belies this claim.

Glendenning admitted in his testimony that counsel visited him at least four times, and counsel likewise testified that he visited Glendenning in prison and reviewed the case with him. Additionally, Glendenning testified that he spoke with counsel about the offers from the Commonwealth during jury selection and at another time when he explained to counsel that he did not understand what the offers meant. Counsel also stated that he conveyed offers to Glendenning through his secretary. The PCRA court credited all of this testimony. This claim fails. *Burno*, 94 A.3d at 972.

Next, Glendenning claims that counsel failed to "utilize certain medical evidence" that Glendenning provided to him regarding his impotence and health. Glendenning's Br. at 3. He maintains "that no doctors were called, and no medical records or evidence of his prescription drug use were used." *Id.* at 14. He maintains that in sex cases involving children, "in order to bolster the defendant, you require other witnesses like medical personnel who can testify as to improbability and impossibility, and to family who can explain the full

details of taking care of a 400 pound plus man." *Id.* at 10. We find no merit to this claim.

Counsel admitted that Glendenning gave him a list of his prescriptions and "a list of medical providers and some medical records or at least discharge type papers and those sorts of things." N.T., at 37-38. Additionally, the PCRA court found Glendenning's testimony credible that "Mr. Glendenning provided . . . a list of medical records and treating physicians of [Glendenning]." *See* Order, filed 12/11/18, at 1. However, the PCRA court concluded that "based on the testimony of [trial counsel], . . . [trial counsel] was not advised of [Glendenning's] impotence and therefore counsel was not ineffective for failure to present evidence of impotence." 1925(a) Op. at 5. The court also stated that it "recalled" that counsel presented "evidence of [Glendenning's] physical size and other physical abnormalities, which made sexual intercourse impossible." *Id.* at 5-6.

We are bound by the court's credibility determinations, so long as they have support in the record. *See Commonwealth v. Johnson*, 966 A.2d 523, 539 (Pa. 2009). The court's finding that Glendenning told counsel that it was his weight, and not impotence, that prevented him from having sexual intercourse is supported by counsel's testimony at the PCRA hearing to that effect. We therefore find no error in the court's determination that counsel was not advised of Glendenning's alleged impotence.

However, we cannot do the same in regards to Glendenning's claim that counsel failed to introduce medical evidence at trial because the trial

transcripts are not in the certified record. The PCRA court recalled that counsel presented "evidence of [Glendenning's] physical size and other physical abnormalities, which made sexual intercourse impossible." 1925(a) Op. at 5-6. However, Glendenning disputes that recollection and maintains that counsel did not introduce medical evidence of sexual intercourse being impossible. The Commonwealth sides with the trial court and contends that counsel did, in fact, introduce such evidence. *See* Commonwealth's Br. at 11.

It is "the appellant's duty to ensure that the certified record is complete for purposes of review." *Commonwealth v. Lopez*, 57 A.3d 74, 82 (Pa.Super. 2012) (quoting *Commonwealth v. Reed*, 971 A.2d 1216, 1219 (Pa. 2009)). If the appellant has failed in that duty, and we are unable as a result to decide a particular issue on appeal, the appellant has waived the issue. *See Commonwealth v. O'Black*, 897 A.2d 1234, 1238 (Pa.Super. 2006).

There are photographs in the certified record of Glendenning and portions of his body. However, because we do not have the notes of testimony from the trial, we cannot ascertain for ourselves the purpose for which such evidence was admitted. Furthermore, nothing in the record suggests that Glendenning ever asked that the trial transcript be placed in the certified record. Therefore, since the record is inadequate for us to resolve the dispute over what exactly happened at trial, Glendenning has waived this issue.

Glendenning next claims that counsel "failed to utilize the witnesses provided by [Glendenning]." Glendenning's Br. at 3. He maintains that these

- 11 -

witnesses would have impeached the victim's testimony, testified about the victim's alleged recantation, and discussed his dependence on family members to care for him because of his weight. *See id.* at 3-4.

In order to sustain a claim of ineffectiveness of counsel for failing to call witnesses at trial, a petitioner must prove "the witnesses existed, the witnesses were ready and willing to testify, and the absence of the witnesses' testimony prejudiced petitioner and denied him a fair trial." *Commonwealth v. Johnson*, 27 A.3d 244, 247 (Pa.Super. 2011) (quoting *Commonwealth v. Cox*, 983 A.2d 666, 693 (Pa. 2009)).

Here, Glendenning failed to show that the witnesses were ready and willing to testify, or that he sustained any prejudice from the omission of their testimony. Not one of the 26 witnesses testified or appeared at the evidentiary hearing and Glendenning did not present evidence that any of these witnesses were ready and willing to testify. Moreover, Glendenning failed to prove any prejudice. While Glendenning argues that the children would have testified that the victim recanted her testimony, counsel testified that this was not the case, and the court credited counsel's testimony.

As for the character witnesses, counsel testified that they could have offered only testimony specific to their experiences with Glendenning, and the court again credited that testimony. *See* 1925(a) Op. at 4; *see also* N.T. at 45 (counsel testifying the testimony "was specific to their experience with [Glendenning]"). Such testimony, however, would not have been admissible.

Pennsylvania Rules of Evidence 404 and 405 govern when character testimony may be introduced at trial. ***Commonwealth v. Medina***, 209 A.3d 992, 997 (Pa.Super. 2019). Testimony of a defendant's character is limited in the following way:

> Evidence of good character offered by a defendant in a criminal prosecution must be limited to his general reputation for the particular trait or traits of character involved in the commission of the crime charged. Such evidence must relate to a period at or about the time the offense was committed and must be established by testimony of witnesses as to the community opinion of the individual in question, **not through specific acts or mere rumor**.

***Id.*** (emphasis added) (quoting ***Commonwealth v. Radecki***, 180 A.3d 441, 453-54 (Pa.Super. 2018)). Here, the alleged character testimony would have been improper because "it was specific to [the witnesses] experience with [Glendenning]." N.T., at 45. The PCRA court did not abuse its discretion in denying this claim.

Next, Glendenning claims that "counsel failed to ask for photographic evidence and any medical evidence related to time lines to help exonerate [Glendenning]." Glendenning's Br. at 4. Glendenning states that his medical evidence would have been useful to his case and that counsel admitted that he did not speak with any of Glendenning's doctors. ***Id.*** at 15. Glendenning provides no further analysis regarding this issue. It is therefore waived for lack of development. ***See Commonwealth v. Charleston***, 94 A.3d 1012, 1022-23 (Pa.Super. 2014) (finding waiver where appellant failed to develop argument).

- 13 -

In any event, this issue is meritless. While counsel admitted that he did not speak with any of Glendenning's doctors, he also testified that Glendenning could not name any doctor who could testify that Glendenning was physically incapable of committing the crimes of which he was accused. *Id.* at 44. Additionally, at the evidentiary hearing, no evidence was presented from any of Glendenning's doctors that his medical issues prevented him from doing so. The PCRA court did not err in denying this claim of ineffectiveness.

Last, Glendenning argues that "[c]ounsel failed to subpoena defense witnesses." Glendenning's Br. at 4. Glendenning fails to develop or mention this claim in the argument section of his brief. Therefore, the claim is waived. *See Charleston*, 94 A.3d at 1022-23 (finding waiver where appellant failed to develop argument).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/29/2019