**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Carl Edward JOHNSON, Appellant.**

Superior Court of Pennsylvania.

Submitted April 25, 2011.

Filed Aug. 15, 2011.

---

**3.** We note that Mother did not present proof of her alleged hospitalization on appeal.

Jack W. Connor, Uniontown, for appellant.

Marjorie J. Fox, Assistant District Attorney, Waynesburg, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., BOWES, and MUNDY, JJ.

OPINION BY STEVENS, P.J.:

Carl Edward Johnson ("Appellant") appeals from the order of the Court of Common Pleas of Greene County, denying his petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  After careful review, we affirm.

The trial court aptly summarized the factual background of this case as follows:

[Appellant], his wife, and two daughters were neighbors to the five year old victim and her mother and father.  On the evening of July 30, 2005, the victim's mother had made arrangements with [Appellant's] wife for the child to stay overnight at [Appellant's] residence and to go to church with [Appellant's wife] the next morning.  In the early morning hours of July 31, 2005, [Appellant] went into the bedroom where the victim was sleeping on the floor between the beds of his two daughters and enticed the victim to go downstairs to the living area of his home.  [Appellant] then apparently sat down on the sofa with the victim beside him.  He exposed his penis to her and placed his hand on the back of her head, attempting to pull her head down in a way in which his penis would go into

1.  42 Pa.C.S.A. §§ 9541–46.

her mouth. Prior to his penis making contact with the victim's mouth, she broke away from him and ran back upstairs. [Appellant's] wife was awakened by the victim's crying and the victim apparently made some comment that [Appellant] had attempted inappropriate behavior with her but was less than specific in that allegation.

\*　　\*　　\*

After the victim went to church with [Appellant's] wife that morning, [Appellant's wife] took the child home and informed the child's mother that something had occurred but had no specifics. The mother contacted the Pennsylvania State Police who investigated but could not obtain sufficient evidence from the victim to file charges against [Appellant,] who denied any contact with the child. Over the next several months, there was a reluctance on the part of the child to tell anyone, including her mother, what had occurred although the parents could tell by her behavior that she was disturbed and obtained counseling for her. Some months after the event, the child told her mother what had happened and the Pennsylvania State Police were immediately contacted. After once again investigating the case, the Pennsylvania State Police filed charges....

Trial Court Opinion (T.C.O.), 7/30/07, at 2–4.

Appellant was arrested and charged with criminal attempt to commit Involuntary Deviate Sexual Intercourse (IDSI) with a child,[2] indecent assault,[3] and indecent exposure.[4] On January 18, 2007, a jury convicted Appellant of the aforementioned offenses. On April 10, 2007, the trial court sentenced Appellant to 60–120 months imprisonment for attempted IDSI, 9–18 months for indecent assault, and 3–6 months for indecent exposure with all sentences set to run concurrently. Appellant filed a post-sentence motion, which the trial court denied on July 30, 2007.

Appellant filed a timely appeal to this Court on August 28, 2007. On direct appeal, Appellant claimed, *inter alia,* that the trial court abused its discretion in precluding Appellant from offering eight witnesses to testify as to Appellant's reputation in the community as a chaste person who acted appropriately around children. During trial, Appellant's counsel had made an offer of proof to show that these witnesses would have testified as to Appellant's chastity and child-appropriate behavior within his own family. On appeal, this Court found that the trial court did not abuse its discretion in excluding this evidence "since character evidence is limited to testimony about a defendant's general reputation in the community." *See Commonwealth v. Johnson,* No. 1587 WDA 2007, unpublished memorandum at 8, 959 A.2d 966 (Pa.Super. filed July 16, 2008). Accordingly, this Court affirmed Appellant's judgment of sentence.

On July 10, 2009, Appellant filed the instant, timely PCRA petition. Following a hearing held on October 19, 2009, the PCRA court denied Appellant's petition on March 17, 2010. Appellant filed a timely appeal and complied with the trial court's directions to file a concise statement of matters complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b).

▪ Appellant raises one issue for our review on collateral appeal:

---

**2.** 18 Pa.C.S.A. § 3123(b), 18 Pa.C.S.A. § 901.

**3.** 18 Pa.C.S.A. § 3126(a)(7) (complainant is less than 13 years of age).

**4.** 18 Pa.C.S.A. § 3127(a) (complainant is less than 16 years of age).

Whether the trial court erred in denying [A]ppellant's Post Conviction Relief Act Petition as [A]ppellant established trial counsel's ineffectiveness in failing to properly offer [A]ppellant's reputation witnesses at trial and the trial court's conclusion that the reputation witnesses' knowledge of [A]ppellant's reputation would not have been developed from their general knowledge of [A]ppellant within the community is not supported by, and in fact is belied from, the instant record?

Appellant's Brief, at 4.

■ In reviewing an appeal from the denial of PCRA relief, "our standard of review is whether the findings of the PCRA court are supported by the record and free of legal error." *Commonwealth v. Martin*, 607 Pa. 165, 5 A.3d 177, 182 (2010) (citations omitted). "The PCRA provides relief to individuals who prove they were convicted of crimes they did not commit and those receiving illegal sentences." *Commonwealth v. Fletcher*, 604 Pa. 493, 514, 986 A.2d 759, 771–72 (2009) (citing 42 Pa.C.S.A. § 9542). In order to be eligible for PCRA relief, the petitioner must prove by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated circumstances found in Subsection 9543(a)(2); one of those circumstances is the ineffective assistance of counsel. 42 Pa.C.S.A. § 9543(a)(2)(ii).

Appellant's sole claim on collateral appeal is that he was denied effective assistance of counsel when counsel failed to properly call character witnesses on Appellant's behalf, by mischaracterizing the testimony the witnesses would give. Because there is a presumption that counsel provided effective representation, the defendant bears the burden of proving ineffectiveness. *Commonwealth v. Ligons*, 601 Pa. 103, 124, 971 A.2d 1125, 1137 (2009) (citation omitted). To prevail on an ineffective assistance claim, a defendant must establish "(1) [the] underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his [client's] interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different." *Commonwealth v. Ali*, 608 Pa. 71, 10 A.3d 282, 291 (2010) (citations omitted). A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. *Id.*

■ A defense counsel's failure to call a particular witness to testify does not constitute ineffectiveness *per se*. *Commonwealth v. Cox*, 603 Pa. 223, 267, 983 A.2d 666, 693 (2009) (citation omitted). "In establishing whether defense counsel was ineffective for failing to call witnesses, a defendant must prove the witnesses existed, the witnesses were ready and willing to testify, and the absence of the witnesses' testimony prejudiced petitioner and denied him a fair trial." *Id.* at 268, 983 A.2d at 693. In the instant case, the parties do not dispute that trial counsel knew Appellant's proposed character witnesses existed and were ready and willing to testify at Appellant's trial, but the parties contest whether Appellant was prejudiced by the absence of their testimony. Upon our review of the record, we find Appellant failed to show prejudice as his proposed witnesses did not offer admissible testimony.

■ As a general rule, evidence of a person's character may not be admitted to show that individual acted in conformity with that character on a particular occasion. Pa.R.E. 404(a). However, Pennsylvania Rule of Evidence 404(a)(1) provides an exception which allows a criminal defendant to offer evidence of his or her charac-

ter traits which are pertinent to the crimes charged and allows the Commonwealth to rebut the same. Pa.R.E. 404(a)(1). This Court has further explained the limited purpose for which this evidence can be offered:

It has long been the law in Pennsylvania that an individual on trial for an offense against the criminal law is permitted to introduce evidence of his good reputation in any respect which has "proper relation to the subject matter" of the charge at issue. Such evidence has been allowed on a theory that general reputation reflects the character of the individual and a defendant in a criminal case is permitted to prove his good character in order to negate his participation in the offense charged. The rationale for the admission of character testimony is that an accused may not be able to produce any other evidence to exculpate himself from the charge he faces except his own oath and evidence of good character.

It is clearly established that evidence of good character is to be regarded as evidence of substantive fact just as any other evidence tending to establish innocence and may be considered by the jury in connection with all of the evidence presented in the case on the general issue of guilt or innocence. Evidence of good character is substantive and positive evidence, not a mere make weight to be considered in a doubtful case, and, ... is an independent factor which may of itself engender reasonable doubt or produce a conclusion of innocence. **Evidence of good character offered by a**

defendant in a criminal prosecution must be limited to his *general reputation for the particular trait or traits of character* involved in the commission of the crime charged. The cross-examination of such witnesses by the Commonwealth must be limited to the same traits. Such evidence must relate to a period at or about the time the offense was committed, and **must be established by testimony of witnesses as to the *community opinion* of the individual in question, *not through specific acts* or mere rumor.**

*Commonwealth v. Luther*, 317 Pa.Super. 41, 463 A.2d 1073, 1077–78 (1983) (citations omitted) (emphasis added).[5] In *Commonwealth v. Van Horn*, 797 A.2d 983, 987–88 (Pa.Super.2002), this Court rejected Van Horn's claim that his trial counsel was ineffective in failing to call character witnesses, when he failed to show that they would have given proper testimony. This Court held that his relatives' testimony that Van Horn had never sexually abused them and had a good relationship with the victim was not evidence of his "general reputation in the community." *Id.* at 988.

In the case *sub judice*, Appellant claimed that trial counsel's mischaracterization of his proposed character evidence prevented him from offering the testimony of his siblings, nieces, nephew, and best friend, who he claimed would have testified to his reputation for chastity in the community. However, none of Appellant's proposed witnesses testified as to Appellant's general reputation for having chastity as a character trait, but in fact, opined that Appellant was innocent of the crimes

---

5. The parties concede that character evidence of Appellant's general reputation in the community for chastity is properly related to the sex offenses with which Appellant was charged. *Cf. Commonwealth v. Lauro*, 819 A.2d 100, 109 (Pa.Super.2003) (quoting *Luther*, 463 A.2d at 1078) (noting in *rape* cases,

"evidence of the character of the defendant would be limited to presentation of testimony concerning his general reputation in the community with regard to such traits as nonviolence or peaceableness, quietness, good moral character, chastity, and disposition to observe good order").

charged because he always acted appropriately around children in the family. For example, Appellant's niece, Ginny Yeager, gave the following testimony:

> [PCRA Counsel]: [Y]ou say that you know . . . [Appellant] has a reputation of being innocent of unlawful sexual intercourse?
>
> [Ms. Yeager]: Yes.
>
> [PCRA Counsel]: What do you mean by that?
>
> [Ms. Yeager]: I just—I mean that he has never done anything to any child or any person that would not be—to harm them or hurt them in any sort of way.
>
> [PCRA Counsel]: So you're saying that you believe he's innocent of this crime?
>
> [Ms. Yeager]: Yes.
>
> [PCRA Counsel]: Now, what do you mean by having a reputation in the community of being innocent of this crime?
>
> [Ms. Yeager]: He's a well-liked man, so I believe that he's innocent as far as in the community and . . .

PCRA Hearing, 10/19/09, at 10–11.

Similarly, Appellant's brother, John Johnson, proclaimed Appellant's innocence based on the fact that Appellant did not engage in inappropriate behavior with the children in his family:

> [PCRA Counsel]: Now, you've signed an affidavit saying that you know that [Appellant] has established a reputation in the community as being innocent of unlawful sexual intercourse?
>
> [Mr. Johnson]: Yes.
>
> [PCRA Counsel]: Can you explain what you mean by that?
>
> [Mr. Johnson]: That he's been around my children and grandchildren and nev-er has anything happened between him and a child.
>
> [PCRA Counsel]: Of any member of his family?
>
> [Mr. Johnson]: Right.
>
> [PCRA Counsel]: So my question then is: Where did you hear that—you believe he's innocent?
>
> [Mr. Johnson]: Yes.
>
> [PCRA Counsel]: So that's what you meant by saying you think that Mr. Johnson as being innocent of unlawful sexual intercourse? [sic]
>
> [Mr. Johnson]: Yes.
>
> [PCRA Counsel]: Because he's innocent in this particular situation?
>
> [Mr. Johnson]: He's innocent in any situation.
>
> [PCRA Counsel]: We're talking about his reputation. Have you heard from people in the community about [Appellant's] reputation?
>
> [Mr. Johnson]: Yes.
>
> \* \* \*
>
> [PCRA Counsel]: And what is that reputation?
>
> [Mr. Johnson]: That he's an upstanding man.

*Id.* at 16–18.

The only references that the proposed witnesses made to Appellant's character was that he was "well-liked," "upstanding," and a "good man";[6] they did not specifically comment on his reputation for chastity in the community. The witnesses' testimony to Appellant's specific acts in behaving appropriately around children in their family is not proper character evi-

<hr>

6. We note that trial counsel did offer character evidence at trial with respect to Appellant's reputation as a well-liked man in the community. *See* N.T. Trial, 1/18/07, at 149. On appeal, Appellant narrowly argued that the proposed character witnesses would have given essential testimony concerning his "good reputation for chaste and child appropriate behavior." Appellant's Brief, at 8, 13.

dence as to his general reputation for chastity in the community. *See Commonwealth v. Lauro*, 819 A.2d 100, 109 (Pa.Super.2003) (finding testimony regarding Lauro's normal relationship with his children did not relate to his general reputation in the community, and was thus inadmissible).[7] Accordingly, we cannot find that the absence of this testimony prejudiced Appellant as to require a new trial and conclude the trial court did not err in denying Appellant's PCRA petition.

Order affirmed.

BOWES, J., files a dissenting opinion.

## DISSENTING OPINION BY BOWES, J.:

I respectfully dissent from the majority's decision herein. A jury convicted Appellant of attempted involuntary deviate sexual intercourse with a child, indecent assault, and indecent exposure. At trial, the Commonwealth produced evidence that while the then-five-year-old victim was staying overnight at Appellant's residence on July 30, 2005, Appellant awoke her, exposed his penis, and attempted to place the victim's mouth on it. The victim did not tell anyone precisely what occurred that night for approximately one year.

At Appellant's jury trial, his counsel attempted to present the testimony of eight character witnesses on Appellant's behalf. Trial counsel admittedly failed to make the proper proffer at trial, and the trial court disallowed the evidence. Specifically, counsel stated that the witnesses would testify about Appellant's reputation for chastity among family members. N.T. Trial, 1/18/07, at 150–53. However, the record establishes that the witnesses were willing, available, and able to testify about Appellant's character for chastity regarding children and appropriate behavior around children in the community in general. At a post-trial hearing on this matter, trial counsel admitted that he had made the incorrect proffer at trial. The issue thus presented herein is whether trial counsel was ineffective in this respect.

"To prevail on his ineffectiveness claims, Appellant must plead and prove, by a preponderance of the evidence, three elements: (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) Appellant suffered prejudice because of counsel's action or inaction." *Commonwealth v. Spotz*, 18 A.3d 244, 260 (Pa.2011). Since trial counsel obviously had no reasonable strategy for making the incorrect proffer, the questions remaining in this appeal are: 1) whether there is arguable merit to the position that the witnesses in question would have been permitted to testify had the correct proffer been made; and 2) whether Appellant was prejudiced by counsel's default. "To establish the . . . prejudice prong [of the ineffectiveness standard, the defendant] must show that there is a reasonable probability that the

---

7. Appellant also relies on the affidavits of the character witnesses which he submitted to the trial court with his PCRA petition. All eight of the witnesses used identical language to claim they would have testified that Appellant has "established a reputation in the community as being innocent of unlawful sexual intercourse, being pure in thought and act, acting appropriately in relation to children and being a decent person relative to caring for children in a close setting." Exhibits A–1 through A–8. However, at the PCRA hearing, when each witness was separately asked to explain what Appellant's "general reputation for chastity" meant, each witness pointed to Appellant's specific acts of conduct, indicated that Appellant had never acted inappropriately around family children, and expressed their belief that Appellant was innocent of assaulting the victim in this case. This testimony does not meet the evidentiary criteria for admitting character evidence to show Appellant's *general reputation* for chastity in the community.

outcome of the proceedings would have been different but for counsel's action or inaction." *Id.*

The first issue is whether the witnesses in question were valid character witnesses. At the PCRA hearing on this matter, Appellant introduced the affidavits, which were attached to the PCRA petition, of the eight character witnesses. The Commonwealth had no objection to the presentation of these affidavits, which read as follows. Tracey J., the wife of Appellant's nephew, had known Appellant for twelve years. Given her relationship with Appellant, her area of residence, socialization, and general interaction in the community in performing the basic functions of life, Tracey J. could testify about Appellant's "character and reputation in the community." Affidavit, Tracey J., 6/23/09, at 1. At Appellant's trial, she was able, willing, and ready to testify on Appellant's behalf and remains able to testify, based on this knowledge, that Appellant has "established a reputation in the community as being innocent of unlawful sexual intercourse, being pure in thought and act, acting appropriately in relation to children and being a decent person relative to caring for children in a close setting." *Id.*

John J. is Appellant's brother, and based upon that relationship, his area of residence, employment, socialization, and "general interaction in the community in performing the basic functions of life," he was familiar with Appellant's "character and reputation in the community." Affidavit John J., 6/22/09, at 1. He was ready, willing, and able to testify at Appellant's trial and continues to be able to testify that based upon this knowledge, Appellant has "established a reputation in the community as being innocent of unlawful sexual intercourse, being pure in thought and act, acting appropriately in relation to chil-

dren and being a decent person relative to caring for children in a close setting." *Id.*

Janet A. and Susan S., Appellant's sisters, affirmed the following. In light of Janet A.'s relationship with Appellant, her "area of residence, socialization, and general interaction in the community in performing the basic functions of life," she was familiar with Appellant's "character and reputation in the community." Affidavit of Janet A., 6/22/09, at 1. Based on Susan S.'s relationship with Appellant, her "area of residence, employment, socialization, and general interaction in the community in performing the basic functions of life," she was familiar with Appellant's "character and reputation in the community." Affidavit of Susan S., 6/22/09, at 1. As a result of their knowledge, both sisters were ready, willing, and able to testify at trial and remain willing to testify that Appellant "has established a reputation in the community of being innocent of unlawful sexual intercourse, being pure in thought and act, acting appropriately in relation to children and being a decent person relative to caring for children in a close setting." Affidavit of Janet A., 6/22/09, at 1; Affidavit of Susan S., 6/22/09, at 1.

Appellant's niece Ginny Y., and nephew, William J., knew Appellant their entire lives. Given their relationship to Appellant, their "area of residence, employment, socialization, and general interaction in the community in performing the basic functions of life," Ginny Y. and William J. could provide evidence of Appellant's "character and reputation in the community." Affidavit, Ginny Y., 6/22/09, at 1; Affidavit, William J., 6/23/09, at 1. At Appellant's trial, they were able, willing, and ready to testify on Appellant's behalf and remain able to testify, based on this knowledge, that Appellant has "established a reputation in the community as being innocent of unlawful sexual intercourse, being pure in thought

and act, acting appropriately in relation to children and being a decent person relative to caring for children in a close setting." Affidavit, Ginny Y., 6/22/09, at 1; Affidavit, William J., 6/23/09, at 1.

Rocky N. was Appellant's best friend and had known him for thirty years as of 2009. Rocky N. lived and worked in the same area as Appellant. Due to Rocky N.'s relationship with Appellant, "area of residence, employment, socialization, and general interaction in the community in performing the basic functions of life," Rocky N. was familiar with Appellant's "character and reputation in the community." Affidavit of Rocky N., 6/22/09, at 1. Based upon his knowledge, Rocky N. was prepared, willing, and able to testify at trial and remains willing to testify that Appellant "has established a reputation in the community of being innocent of unlawful sexual intercourse, being pure in thought and act, acting appropriately in relation to children and being a decent person relative to caring for children in a close setting." *Id.*

Delilah P. was also a friend of Appellant and had known him for thirty years. As a result of her relationship with Appellant, her "area of residence, socialization, and general interaction in the community in performing the basic functions of life," Delilah P. could and can provide evidence about Appellant's "character and reputation in the community." Affidavit, Delilah P., 6/22/09, at 1. At Appellant's trial, she was able, willing, and ready to testify on Appellant's behalf and remains able to testify, based on this knowledge, that Appellant has "established a reputation in the community as being innocent of unlawful sexual intercourse, being pure in thought and act, acting appropriately in relation to children and being a decent person relative to caring for children in a close setting." *Id.*

The law of this Commonwealth is that "[e]vidence of good character is to be regarded as evidence of substantive fact just as any other evidence tending to establish innocence and may be considered by the jury in connection with all the evidence presented in the case on the general issue of guilt or innocence." *Commonwealth v. Hull*, 982 A.2d 1020, 1022 (Pa.Super.2009), (quoting *Commonwealth v. Harris*, 785 A.2d 998, 1000 (Pa.Super.2001)). Pursuant to Pa.R.E. 404(a)(1), a defendant can present evidence of his reputation in the community as to the character trait that is pertinent at trial.

The affidavits of each witness clearly and unequivocally establish that they were prepared, able, and willing to testify as to the pertinent character trait at issue in this trial, chastity with children, and that they had knowledge as to this character trait of Appellant **in the community**. They were not planning to testify that Appellant did not sexually abuse them or their children. *Cf. Commonwealth v. Van Horn*, 797 A.2d 983 (Pa.Super.2002) (witnesses could not testify that defendant did not sexually abuse them; such testimony is not character evidence). While the witnesses were family members and friends, they worked and lived in the pertinent community, knew Appellant for years, and their knowledge was not merely based upon their relationship with Appellant but also upon their socialization and interaction in the community. The testimony from each witness is classic character evidence and would have been admissible at Appellant's trial under binding Supreme Court precedent.

*Commonwealth v. Weiss*, 530 Pa. 1, 606 A.2d 439 (1992), is dispositive. In that case, Weiss was convicted of numerous offenses related to his sexual abuse of a minor. On appeal, he claimed that he received ineffective assistance of trial counsel since coun-

sel failed to present character witnesses at his trial. Weiss alleged that members of his family, a co-worker, and his employer were available and willing to testify that he had a good character for chastity. The Court observed that character evidence, in and of itself, is sufficient to raise a reasonable doubt as to a defendant's guilt, and concluded that counsel was ineffective for failing to explore and present these witnesses at trial in light of the fact that Weiss's convictions rested solely on the credibility of the victim. Thus, our Supreme Court has ruled that family members, who necessarily know about a defendant's character based on their familial and social relationship with the defendant, are valid character witnesses.

Additionally, based on the present record, a finding of prejudice is compelled. Instructive is our recent decision in *Commonwealth v. Hull, supra,* where we affirmed the PCRA court's decision to grant the defendant a new trial based upon trial counsel's failure to present character witnesses. Therein, the defendant was convicted of sexually abusing his adopted daughter, and his convictions were premised solely upon her testimony. Trial counsel's strategy was to demonstrate that the victim was fabricating the charges, but counsel neglected to present available witnesses as to defendant's good character in the community for morality and upstanding behavior. We concluded that counsel's decision to forego that testimony instead of using it to complement his attack on the victim's veracity constituted ineffectiveness in light of the fact that there were no physical findings to corroborate that the crimes occurred.

We noted in *Hull* that where a witness's testimony is "of paramount importance, ... character evidence is critical to a jury's determination of credibility." *Id.* at 1022. We also concluded that counsel's fear that damaging character witnesses might be called was unfounded because the defendant had no prior record and there was no indication that such witnesses were available. *See also Commonwealth v. Luther,* 317 Pa.Super. 41, 463 A.2d 1073 (1983) (in awarding a new trial to a defendant prosecuted for rape due to counsel's failure to present character witnesses, we noted that where the Commonwealth's evidence rests upon a single witness and the defendant lacks a prior criminal record, character witnesses can be crucial in establishing a defendant's innocence).

In this case, there was no physical evidence of abuse, and Appellant's convictions rest upon the testimony of a six-year-old who did not report Appellant's actions for nearly one year. The record establishes that at fifty years of age, Appellant had no prior record; his sole conviction was a DUI that was processed through ARD. *Cf. Van Horn, supra* (character witnesses could have been impeached with defendant's prior convictions). All eight witnesses in question would have testified properly as to Appellant's reputation in the community for chastity with children. This evidence could have been crucial in obtaining an acquittal.

The PCRA court and majority herein rely upon *Van Horn, supra,* in concluding that the witnesses' testimony was inadmissible. My reading of *Van Horn* reveals that it is distinguishable and its application constitutes an error of law. Therein, the defendant claimed that counsel was ineffective in not obtaining the testimony of relatives that "Appellant had a good relationship with the victim and that Appellant did not sexually abuse any of them." *Id.* at 988. We noted that such evidence did not constitute character evidence because "the relatives' own experience with Appellant and their perceived relationship between Appellant and the victim is not

testimony regarding Appellant's 'general reputation in the community.'" *Id.* In this case, however, the affidavits clearly establish that each witness would have testified about Appellant's "general reputation [in the community] for the particular trait or traits of character involved in the commission of the crime charged," which we acknowledged in *Van Horn* to be proper character evidence. *Id.* at 987.

The PCRA court herein also concluded that the witnesses' opinions were infirm because, on cross-examination, the witnesses were unable to articulate the basis for their knowledge other than their familial or social contact with Appellant. This type of reasoning, which the majority accepts, effectively defeats a defendant's ability to present character evidence. Character witnesses are, in most instances, family and friends. Social and familial contact is the primary manner in which a friend or family will gain knowledge of a person's community reputation. Nevertheless, all these witnesses lived, interacted, socialized, and, in some cases, worked in the pertinent community. Through living, interacting, socializing, and working in the community, they knew Appellant's reputation for chastity with children. He had never been accused of such misconduct and was known by them for acting appropriately with children.

The type of community interaction discounted by the PCRA court and majority as a proper basis of knowledge of a person's character will always be the ground for any character witness's knowledge of the defendant's character in the community. Indeed, it is unnecessary for a witness to have specifically discussed a particular character trait with community members in order for the witness to be familiar with that characteristic. *Commonwealth v. Gaines,* 167 Pa.Super. 485, 75 A.2d 617 (1950).

The end result of the majority's holding serves to prevent any relative or friend, who necessarily gains knowledge of a person's reputation through interaction with relatives and friends, from being a character witness. This type of rationale is directly contrary to *Weiss, supra,* which permits relatives to be character witnesses. The majority's decision today runs contrary to settled case law permitting a defendant to present evidence of his character in the community from family and friends to establish a character trait that is pertinent for purposes of trial.

The majority and PCRA court further rely upon the Commonwealth's cross-examination of these witnesses about the basis of their knowledge as the rationale for precluding the testimony in the first instance. This, too, is error. The fact that each witness may be impeached by the Commonwealth as to the basis for their knowledge relates to the weight to be given to their testimony by the jury and not its admissibility in the first instance. The affidavits demonstrate that each witness's proffered testimony constituted classic character evidence, and Appellant planned to call none to testify about his specific acts relating to friends and family. In sum, the witnesses in question were proper character witnesses. In my view, our case law mandates reversal herein, and I therefore respectfully dissent.