J-S09026-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
WILLIAM C. COTTRELL :
:
Appellant : No. 2659 EDA 2019

Appeal from the PCRA Order Entered August 13, 2019
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0006498-2015

BEFORE: SHOGAN, J., LAZARUS, J., and COLINS, J.[*]

MEMORANDUM BY LAZARUS, J.: **FILED MARCH 27, 2020**

William C. Cottrell appeals from the order, entered in the Court of Common Pleas of Bucks County, denying his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. Upon careful review, we affirm.

At approximately 2:00 a.m. on June 16, 2012, an individual accosted Fox McClure outside his residence. The man forced McClure to give him $200 from his wallet and demanded to be let into the McClure residence, where McClure's wife, Willie Mae, was present. Upon entering the home, the individual demanded that the McClures open their safe. At first, the McClures denied owning a safe but, after the individual struck Mr. McClure in the head with a gun and threatened to kill Mrs. McClure, Mrs. McClure opened the safe

---

[*] Retired Senior Judge assigned to the Superior Court.

and gave the man the $300 in antique silver dollars contained therein. Shortly thereafter, the man fled through the front door of the McClure home. The McClures later described the individual as a black male wearing a black bandana or ski mask, a black hoody and a baseball cap. They estimated him to be in his late 20s or early 30s and between 5'10" and 6'1" tall, with a medium build.

Mrs. McClure called 911 and provided information as to the direction in which the individual had fled. Nearby K9 Officer Keith Bertram received the emergency dispatch, and was advised that an individual in dark clothing was seen running across the turnpike near the ramp and access road. Within two minutes of receiving the dispatch, Officer Bertram arrived at the location of the ramp with his K9 partner, Apollo. Officer Bertram deployed Apollo, who alerted near a house with a fence and pool on Beaver Dam Road. Officer Bertram did not see anyone at that location and, shortly thereafter, ceased tracking.

That same morning, at approximately 2:30 or 3:00 a.m., Michael Hill was in his residence at 5725 Beaver Dam Road when he heard a banging noise and police sirens outside. He walked out to his backyard to investigate and saw a black man approach him from the deck area near the family pool. Hill described the man, who was not wearing anything on his face, as six feet tall, in his mid- to late-30s, with cornrow-style hair and scruffy facial hair. The man offered Hill money not to say anything about their encounter and Hill told him to get out of his yard. Later that day, Hill returned to his backyard and

discovered a dark hooded sweatshirt and a dark baseball cap under the pool deck near the area where the man had been. Hill notified police, who recovered the items. A black and white bandana was discovered inside the hooded sweatshirt. DNA matching that of Cottrell was subsequently found on both the bandana and the baseball cap.

Cottrell was ultimately arrested in July 2015 and charged with numerous offenses related to the McClure incident. The Commonwealth subsequently *nolle prossed* many of those charges and proceeded to trial on the following offenses: two counts each of robbery—threaten immediate serious injury and robbery—inflict or threaten immediate bodily injury, and one count each of burglary, aggravated assault and simple assault. After a jury trial, Cottrell was convicted of all of the above charges. On August 22, 2016, the trial court sentenced him to an aggregate of seven to 20 years' incarceration. Cottrell appealed, and this Court affirmed his judgment of sentence on July 31, 2017. *See Commonwealth v. Cottrell*, 3210 EDA 2016 (Pa. Super. filed July 31, 2017) (unpublished memorandum). Our Supreme Court denied allowance of appeal on January 17, 2018. *See Commonwealth v. Cottrell*, 179 A.3d 440 (Pa. 2018) (Table).

Cottrell filed a timely *pro se* first PCRA petition on December 17, 2018. The PCRA court appointed counsel, who filed an amended petition on April 5, 2019. The Commonwealth filed an answer and the court held a hearing on June 14, 2019. Following briefing by the parties, the court dismissed Cottrell's

petition on August 13, 2019.  This timely appeal followed.  Both Cottrell and the court have complied with Pa.R.A.P. 1925.

Cottrell raises the following claims for our review:

1.  Did the [PCRA] court err in denying [Cottrell's] PCRA claim that trial counsel was ineffective in failing to present character witness testimony at the time of trial[?]

2.  Did the [PCRA] court err in denying [Cottrell's] PCRA claim that trial counsel was ineffective in failing to retain a DNA expert witness to rebut the testimony of the Commonwealth's expert and to raise a reasonable doubt upon the weight and sufficiency of the prosecution's DNA evidence which allegedly linked [Cottrell] to the crime[?]

3.  Did the [PCRA] court err in denying [Cottrell's] PCRA claim that he was denied his constitutionally guaranteed right to effective representation, and trial counsel was ineffective when counsel failed to properly prepare for trial, or meet with [Cottrell] to prepare for trial[?]

Brief of Appellant, at v (renumbered for ease of disposition).

We begin by noting our standard and scope of review of the denial of PCRA relief:

On appeal from the denial of PCRA relief, our standard [] of review is limited to determining whether the PCRA court's findings are supported by the record and without legal error.  Our scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the PCRA court level.  The PCRA court's credibility determinations, when supported by the record, are binding on this Court.  However, this Court applies a *de novo* standard of review to the PCRA court's legal conclusions.

***Commonwealth v. Medina***, 92 A.3d 1210, 1214–15 (Pa. Super. 2014) (citations, quotation marks and brackets omitted).

- 4 -

Cottrell's claims all allege the ineffectiveness of trial counsel. Counsel is presumed effective, and it is a petitioner's burden to prove otherwise. *Commonwealth v. Ousley*, 21 A.3d 1238, 1244 (Pa. Super. 2011). In order to prove that counsel was ineffective, a petitioner must plead and prove each of the following: "(1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error." *Commonwealth v. Grove*, 170 A.3d 1127, 1138 (Pa. Super. 2017) (citation omitted). A failure to plead or prove any prong will defeat an ineffectiveness claim. *Id.*

With regard to the second element, an appellant must show that:

[I]n light of all the alternatives available to counsel, the strategy actually employed was so unreasonable that no competent lawyer would have chosen it. We inquire whether counsel made an informed choice, which at the time the decision was made reasonably could have been considered to advance and protect [the] defendant's interests.

*Commonwealth v. Buska*, 655 A.2d 576, 582-83 (Pa. Super. 1995). "If counsel's chosen course had some reasonable basis, the inquiry ends and counsel's assistance is deemed effective." *Commonwealth v. Williams*, 899 A.2d 1060, 1064 (Pa. 2006).

Finally,

[a] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth

- 5 -

determining process that no reliable adjudication of guilt or innocence could have taken place.

***Commonwealth v. Ligon***, 206 A.3d 515, 519 (Pa. Super. 2019) (citation omitted).

Cottrell first alleges that trial counsel rendered ineffective assistance by failing to present character witness testimony at trial. Specifically, Cottrell asserts that counsel should have called his friend, Monique Cooper, to testify as to Cottrell's character traits of "kindness, compassion, non-violence, and peacefulness." Brief of Appellant, at 17-18. Cottrell argues that, because he "had little defense other than to tell the jury himself he did not commit the crime and to present to the jury his good character," there was "no logical explanation" for not presenting character testimony. ***Id.*** at 18. He asserts that counsel's explanation for not calling character testimony—that he could not present Cottrell's reputation for being a law abiding person due to past convictions for drug-related offenses and fleeing police—was unreasonable because Cooper would not have testified regarding his character for being law-abiding. Cottrell is entitled to no relief.

Generally, evidence of a person's character may not be admitted to show that individual acted in conformity with that characteristic or trait on a particular occasion. Pa.R.E. 404(a). However, Pennsylvania Rule of Evidence 404(a)(1) provides an exception which allows a criminal defendant to offer evidence of his or her character traits that are pertinent to the crimes charged and allows the Commonwealth to rebut the same. Pa.R.E. 404(a)(1).

> Evidence of good character offered by a defendant in a criminal prosecution must be limited to his general reputation for the particular trait or traits of character involved in the commission of the crime charged. The cross-examination of such witnesses by the Commonwealth must be limited to the same traits. Such evidence must relate to a period at or about the time the offense was committed, and must be established by testimony of witnesses as to the community opinion of the individual in question, not through specific acts or mere rumor.

*Commonwealth v. Johnson*, 27 A.3d 244, 248 (Pa. Super. 2011) (citation omitted). If character evidence is offered by a defendant, the Commonwealth may offer evidence to rebut it. *See* Pa.R.E. 404(a). "While character witnesses may not be impeached with specific acts of misconduct, a character witness may be cross-examined regarding his or her knowledge of particular acts of misconduct to test the accuracy of the testimony." *Commonwealth v. Treiber*, 121 A.3d 435, 464 (Pa. 2015) (citation omitted).

Here, the PCRA court concluded that trial counsel had a reasonable basis for not calling character witnesses to testify as to Cottrell's peacefulness and non-violence, as it would have opened the door to rebuttal by the Commonwealth with questions concerning Cottrell's past convictions for drug dealing and fleeing and eluding police. We agree with the PCRA court. The Commonwealth could have "properly probed the standard by which the witness[] evaluated the peacefulness of a drug dealer generally [to] shed light upon Appellant's character trait which he, himself, had put at issue. Such cross-examination is permissible under Pa.R.E. 405(a)[.]" *Commonwealth v. Rashid*, 160 A.3d 838, 849 (Pa. Super. 2017). In light of Cottrell's past convictions, counsel's strategy to "attack the prosecution and not call

character evidence" was reasonable under the circumstances and, thus, did not amount to ineffectiveness. **Grove**, **supra**.

Next, Cottrell asserts that trial counsel was ineffective for failing to retain a DNA expert to rebut the Commonwealth's DNA evidence. Cottrell is entitled to no relief on this claim.

In order to establish ineffectiveness of counsel for failure to call a witness, a petitioner must show that: (1) the witness existed; (2) the witness was available to testify for the defense at trial; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the witness' testimony was so prejudicial as to have denied the petitioner a fair trial. **Commonwealth v. Puksar**, 951 A.2d 267, 277 (Pa. 2008).

Here, Cottrell failed to identify, much less present testimony from, a DNA expert who would have been willing and able to testify on his behalf at trial. Consequently, he is unable to demonstrate the manner in which the unidentified expert would have been helpful to his defense and that the absence of such testimony prejudiced him. **See id.** Accordingly, this claim fails.

Finally, Cottrell asserts that counsel was ineffective for failing to properly prepare for trial or to meet with Cottrell for that purpose. Cottrell claims that, at most, he spoke with counsel twice by telephone prior to trial and once in person on the day of trial. He asserts that counsel did not review the case or discuss discovery with him. Cottrell argues that "without meeting in person,

or at least having a substantive telephone conversation regarding the evidence and possible defenses, trial counsel could not have learned of potential character witnesses, alibi witnesses, defense evidence or have prepared [Cottrell] to testify." Brief of Appellant, at 21. Cottrell believed he had a strong defense and, by failing to meet with him, counsel "took away any and all chance [Cottrell] had for a different outcome." *Id.* at 22.

At Cottrell's PCRA hearing, counsel—who had at that time been practicing criminal law for 33 years—testified that, in the absence of an alibi defense,[1] he did not believe that Cottrell would have been able to assist him in the preparation of a defense. *See* N.T. PCRA Hearing, at 91. Rather, counsel "believe[d] this case would be based on . . . [c]ross-[e]xamination and the lack of identification by the victim or any witnesses, and [an] attempt to discount the DNA found on items that w[ere] found some distance away." *Id.* In furtherance of Cottrell's defense, counsel testified:

> I reviewed discovery. I honed up on DNA and reviewed the transcripts. Probably made various notes to myself before court . . . . I prepared the case like I prepare any serious case, by spending a lot of time on it, by asking colleagues questions, things like that.

_____

[1] Cottrell testified at trial that he had no alibi for the time of the crime. *See* N.T. Trial, 5/24/16, at 285 ("Q: So let's try to get to my question. You have no alibi whatsoever? A: No."). At his PCRA hearing, Cottrell presented testimony by his girlfriend, Kyra Williams, in an attempt to demonstrate an alibi. Williams testified that she realized at some point that the crime Cottrell was accused of had occurred on her birthday and that she and Cottrell had usually spent her birthday together. However, she was unable to specifically testify either that she and Cottrell were together on the date of the offense or what they may have been doing.

*Id.* at 99. Counsel also testified that he visited the scene of the crime in preparation for trial: "I was curious about the layout of the area so I did all that myself. So I went out there, I looked on the maps, things like that." *Id.* at 97. With respect to DNA evidence, counsel recalled that "there were three items [but] only one of them had [] Cottrell's DNA on it as opposed to mixtures" and the items with DNA had been recovered "some distance away and across the turnpike from where the event happened." *Id.* at 98. Counsel testified that his strategy was to highlight both of those factors. Finally, counsel testified that he would have preferred Cottrell not testify at trial. However, once Cottrell indicated his intent to testify, counsel discussed with him: the manner in which he should present himself to the jury; how to look the jurors in the eye; how to dress; that he should tell the truth; that his denial of committing the crime should be strong; and to let his personality show through. *See id.* at 86. Counsel also prepared Cottrell for the questions he would ask him on direct examination. *See id.* at 86-87

In denying relief on this claim, the PCRA court concluded that counsel presented reasonable, strategic bases for his decisions regarding Cottrell's defense. We can discern no error on the part of the court. Although counsel did not have substantial contact with Cottrell prior to trial, the length and frequency of consultations alone cannot support a finding of ineffectiveness. *See Commonwealth v. Johnson*, 51 A.3d 237, 244 (Pa. Super. 2012). Rather, we must evaluate the substantive impact of the consultations counsel did perform. *Id.*

- 10 -

Here, counsel reasonably explained that, given the facts of the case and his intention to focus Cottrell's defense on discrediting the Commonwealth's evidence, he did not feel that Cottrell could be of much assistance in preparing his defense. Moreover, prior to trial, counsel personally investigated the scene of the crime and reviewed the discovery as well as the preliminary hearing notes.[2] At trial, counsel subjected the Commonwealth's witnesses to vigorous cross-examination in an attempt to cast doubt on the identification of Cottrell as the perpetrator of the robbery. In cross-examining Fox and Willie Mae McClure, counsel elicited their agreement that, although Cottrell stood accused of the crime, neither one of them had any idea as to the actual identity of the robber. *See* N.T. Trial, 5/24/16, at 46, 70. Counsel also questioned the McClures regarding the robber's seeming knowledge of the fact that the McClures owned a safe. In an attempt to discredit the police investigation, counsel successfully elicited testimony from the McClures that the police never asked them to identify any individuals who may have been aware of the presence of a safe in their home. *See id.* at 72 ("Q: [D]id they ask you, like, who—friends or family, who might know that you have the safe in your bedroom closet? A: No. Q: They ever ask you to tell them like a list of names? A: No."). Counsel also sought to cast doubt on the DNA evidence by eliciting testimony from the Commonwealth's forensic DNA analyst that it

---

[2] Cottrell was represented by privately-retained counsel at his preliminary hearing.

was impossible for her to determine how long the DNA samples found on the cap and bandana had actually been present. *See id.* at 160, 162-63.

Taken as a whole, the record does not demonstrate that counsel either failed adequately to prepare for trial, or provided ineffective representation at trial. Counsel's defense strategy was a reasonable one under the circumstances and we can discern no error on the part of the PCRA court in denying relief on this claim. *See Williams*, *supra* (counsel not ineffective where chosen course had some reasonable basis).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/27/2020