J-S37027-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| YOLANDA M. WATSON | : | |
| | : | |
| Appellant | : | No. 2825 EDA 2019 |

Appeal from the PCRA Order Entered September 27, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005833-2010

BEFORE: SHOGAN, J., NICHOLS, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY NICHOLS, J.:                    **FILED DECEMBER 8, 2020**

Appellant Yolanda M. Watson appeals from the order dismissing her

first Post Collateral Relief Act[1] (PCRA) petition.  Appellant contends the PCRA

court erred by dismissing her petition without an evidentiary hearing

because a genuine issue of material fact existed as to whether her trial

counsel was ineffective by failing to call character witnesses on her behalf.

We affirm.

We state the facts as set forth by this Court in resolving Appellant's

direct appeal:

> [Appellant] was present in courtroom 802 of the Criminal Justice
> Center throughout the attempted murder trial of her former
> fiancé, Rico Lofton (Lofton).  Lofton's first trial having ended with
> a hung jury, he was being retried on charges that he opened fire
> from a vehicle into a crowd of people gathered on the sidewalk,

---

[1] 42 Pa.C.S. §§ 9541-9546.

in the street, and on the porch of his target's home. Lofton's bullets struck the intended target, as well as a two (2) year old child, and narrowly missed the head of the child's grandmother. As a result of her fear of Lofton, the child's grandmother returned to Portugal and had to be flown back to Philadelphia to testify against Lofton at his retrial. Throughout his retrial, [Appellant] was seated behind Lofton's table every day. As was later developed, [Appellant], who has a prior felony conviction for aggravated assault, repeatedly glared at the prosecutor, Assistant District Attorney Lorraine Donnelly (Ms. Donnelly) throughout the trial. On March 4, 2010, before the deliberating jurors were dismissed for the day, and pursuant to a request by the prosecutor, this court gave specific instructions to the jurors that they were not to discuss the case with anyone.

After the jurors were dismissed, [Appellant] gathered with Lofton and his family at 13th and Filbert Streets outside the Criminal Justice Center. A juror in Lofton's case, [C]omplainant Vladimir Gulko, was walking down Filbert Street, and had just ended a cell phone conversation when he was approached by [Appellant]. Complainant recognized [Appellant] as the woman who had just been talking to Lofton and who had been present in the courtroom the preceding days. [Appellant] approached [C]omplainant, telling him she needed to talk to him about a few things. Complainant told [Appellant] that he was a juror and could not talk to her because of the judge's instructions. Despite being rebuffed by [C]omplainant, [Appellant] continued talking to [C]omplainant as he proceeded down Filbert Street to the Market East train station located approximately one (1) block away. Complainant repeatedly told [Appellant] that he could not and would not talk to her, but [Appellant] continued her explanation of matters otherwise unknown to the jury.

During the one block walk, [Appellant] told [C]omplainant that Lofton's victim and his family were heavily involved in drug dealing and gang-related activities in their neighborhood. [Appellant] further stated that she wanted to testify in Lofton's trial but was prohibited from doing so by his attorney. [Appellant] informed [C]omplainant that the prosecution of Lofton had gone on over the past four (4) years, and she attempted to have [C]omplainant read a document but he refused. Complainant attempted to ignore [Appellant] by putting in headphones, but she continued to talk to him about matters regarding Lofton's case. At some point during this one-sided

conversation [Appellant] mentioned the sum of $38,000 in an attempt to influence [C]omplainant's deliberations. Complainant continued to ignore [Appellant], who followed him until he entered the train station.

When [C]omplainant returned to the courthouse the next morning to resume deliberations he immediately alerted courtroom staff that he had been inappropriately contacted the previous evening. This court then conducted a colloquy on the record with [C]omplainant, in the presence of counsel but outside the hearing of other jurors, and questioned him about what happened, whether he shared this information with other jurors and whether he could continue to deliberate without bias toward either the Commonwealth or Lofton. Satisfied that he had not shared the foregoing encounter with the other jurors, and with his unequivocal ability to resume unbiased deliberations, this court reintegrated [C]omplainant into the deliberating jury. Following [C]omplainant's disclosure, this court made an on the record request for the name of every person seated in the courtroom, and his or her relationship to Lofton, including [Appellant]. Additionally, following the foregoing disclosures, this court prohibited members of Lofton's family from the courtroom during times when the jury was present, with the exception of the pronouncement of the verdict. However, although permitted to return to the courtroom, [Appellant] remained outside in the hallway. Thereafter, the jury returned a partial verdict of guilty against Lofton and the Commonwealth began its investigation into the specific allegations against [Appellant].

Assistant District Attorney Donnelly approached [C]omplainant after the jurors were discharged and requested an interview with him at a later time. Simultaneously, [Appellant] was briefly detained by sheriff's deputies outside of the courtroom but was quickly released because her contact information had already been obtained by the court on the record. Approximately one week later, on March 12, 2010, [C]omplainant was interviewed by Detective Tollier of the Philadelphia Police Department in the presence of Ms. Donnelly. Complainant explained that the woman who approached him was with Lofton and present in the courtroom during the trial. Accordingly, [C]omplainant was shown pictures of [Appellant] and Lofton's mother, the only two (2) women present in the courtroom from Lofton's family throughout the trial. From those pictures, [C]omplainant

- 3 -

identified [Appellant] as the woman who approached him on the street the week before.

*Commonwealth v. Watson*, 2013 WL 11299440, at *1-*2 (Pa. Super. filed Jan. 8, 2013) (unpublished mem.) (citations omitted and formatting altered), *appeal denied*, 78 A.3d 1091 (Pa. 2013).

The police arrested Appellant. *Id.* at *2. A jury convicted Appellant of aggravated jury tampering, obstructing the administration of law, and tampering with jurors. *Id.* The trial court sentenced Appellant to an aggregate sentence of seven-and-one-half to fifteen years' imprisonment. *Id.* Appellant appealed, this Court affirmed on January 8, 2013, and our Supreme Court denied Appellant's petition for allowance of appeal on October 29, 2013. *Id.* at *5; *see* Order, 10/29/13.

The PCRA court docketed Appellant's first *pro se* PCRA petition on October 24, 2014. The PCRA court docketed Appellant's amended PCRA petition on February 5, 2015. The subsequent procedural history is extensive, but essentially, the PCRA court eventually appointed PCRA counsel, who filed an amended PCRA petition on July 2, 2018. The amended PCRA petition claimed that Appellant's trial counsel was ineffective by failing to ask Appellant "to obtain character witnesses as to [Appellant's] reputation for honesty and truthfulness." Am. PCRA Pet., 7/2/18, at 4 (unpaginated). The amended petition included a witness certification signed by PCRA counsel, which identified Julie Dotson as a character witness who was available and willing to testify at Appellant's trial as to Appellant's reputation

for honesty and truthfulness. Witness Cert. The witness certification also listed Dotson's address, which was in North Chesterfield, Virginia.[2] *Id.*

The Commonwealth filed a motion to dismiss on December 21, 2018, claiming that Appellant failed to fulfill her burden of proof by providing "an affidavit from [Dotson] demonstrating that [she] existed and [was] ready, willing, and able to testify on her behalf at trial. She also provides no proof that she informed trial counsel of this alleged character witness." Cmwlth.'s Mot. to Dismiss, 12/21/18, at 6. The Commonwealth argued that because Appellant's claim was "unsupported by any relevant proof," the PCRA court should deny relief. *Id.* The Commonwealth also asserted that Appellant failed "to meet the reasonable basis prong of the ineffectiveness test because she has not produced either a certification or affidavit from trial counsel discussing their trial strategy, [or] in the alternative, provided an explanation as to why she was not able to obtain such a certification or affidavit." *Id.* at 7.

On April 25, 2019, Appellant filed a supplement to her amended PCRA petition, which attached a signed affidavit from Dotson. Suppl. to Am. PCRA Pet., 4/25/19. Dotson averred that she was available and willing to appear at Appellant's trial to testify as to Appellant's "reputation for honesty and

---

[2] The certification did not aver that Dotson was aware of Appellant's reputation in the community.

truthfulness." ***Id.*** The affidavit did not include any reference to "community" or "community opinion."

The Commonwealth filed a response, in which it quoted an exchange between the trial court and Appellant. Cmwlth.'s Resp., 5/14/19, at 2-3. Specifically, the trial court asked Appellant directly as to whether she wished to call any other witnesses besides herself, and Appellant responded in the negative. ***Id.*** at 3. The Commonwealth also argued that Dotson's certification was insufficient because it did not "explain how long she has known [Appellant], in what community and context she knows [Appellant], and whether she has ever spoken to others in the community about [Appellant's] reputation for truthfulness or honesty." ***Id.*** at 5. The Commonwealth further asserted that Appellant failed to establish prejudice because Appellant's own testimony corroborated the Commonwealth's case against her. ***Id.*** (summarizing Appellant's inculpating testimony).

On May 24, 2019, the PCRA court dismissed the PCRA petition without issuing a Pa.R.Crim.P. 907 notice. Order, 5/24/19. On June 5, 2019, the PCRA court vacated its May 24, 2019 order and also issued a Rule 907 notice stating that the issues raised in Appellant's petition lack merit. Order, 6/5/19; Rule 907 Notice, 6/5/19. Appellant did not file a response. On July 10, 2019, the PCRA court dismissed Appellant's PCRA petition.

On August 12, 2019, Appellant filed a petition to reinstate her appellate rights *nunc pro tunc*, which the PCRA court granted on September

27, 2019. Appellant filed a timely notice of appeal on October 1, 2019. The PCRA court did not order Appellant to comply with Pa.R.A.P. 1925(b) and did not prepare a Rule 1925(a) opinion.[3]

Appellant raises one issue:

> Whether the PCRA court violated paragraph (1) of Rule 907 of Pa.R.Crim.P. by summarily dismissing [A]ppellant's PCRA petition without [an] evidentiary hearing, where there was a genuine issue of material fact as to whether [A]ppellant was denied the effective assistance of counsel, when her counsel failed to call [a] character witness on [A]ppellant's behalf at trial?

Appellant's Brief at 4.

After stating the applicable law, Appellant summarily argues that "she was denied the effective assistance of counsel as guaranteed under the United States and Pennsylvania Constitutions, when counsel failed to direct [her] to obtain character witnesses to testify as to her reputation for honesty and truthfulness." *Id.* at 11. Appellant asserts that not only did trial counsel fail "to call any character witnesses, but he did not even discuss the option with his client." *Id.* at 13. In Appellant's view, the Commonwealth's evidence was "far from overwhelming, [and so] the presentation of character evidence would" have supported her case. *Id.* Appellant also contends that trial counsel did not have any reasonable basis for failing to present

---

[3] The PCRA judge retired and did not prepare a Pa.R.A.P. 1925(a) opinion.

character witnesses on her behalf. *Id.* at 14. With respect to prejudice, Appellant argues as follows:

> There is a reasonable probability that had trial counsel presented testimony of [A]ppellant's honesty and truthfulness reputation, the outcome of the proceedings would have been different. In this case, the jury was precluded from hearing positive and substantial character evidence which may have been sufficient to raise a reasonable doubt and produce an acquittal.

*Id.* at 16-17.

We set forth the applicable standard of review in *Commonwealth v. Sandusky*, 203 A.3d 1033, 1043-44 (Pa. Super. 2019):

> Initially, we note that our standard of review from the denial of a PCRA petition is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error. The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions.
>
> Furthermore, to establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.
>
> We have explained that a claim has arguable merit where the factual averments, if accurate, could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination.

The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective. Moreover, a failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness.

*Sandusky*, 203 A.3d at 1043-44 (citations omitted and formatting altered).

"With respect to the PCRA court's decision to deny a request for an evidentiary hearing . . . such a decision is within the discretion of the PCRA court and will not be overturned absent an abuse of discretion." *Commonwealth v. Maddrey*, 205 A.3d 323, 327 (Pa. Super. 2019).

Initially, we note that the "failure to call character witnesses does not constitute *per se* ineffectiveness." *Commonwealth v. Treiber*, 121 A.3d 435, 463 (Pa. 2015) (citation omitted). An appellant must show that

(1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Id.* at 464 (citation omitted).

- 9 -

Pennsylvania Rule of Evidence 404(a) addresses the use of such character evidence:

**(a) Character Evidence.**

*(1) Prohibited Uses*. Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait.

*(2) Exceptions for a Defendant or Victim in a Criminal Case.* The following exceptions apply in a criminal case:

(A) a defendant may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it . . . .

Pa.R.E. 404(a)(1)-(2)(A).[4]  Relatedly, Rule of Evidence 405(a) addresses methods of proving character:

---

[4] In **Commonwealth v. Johnson**, 27 A.3d 244 (Pa. Super. 2011), the Court explained the reasoning for Rule 404(a):

It has long been the law in Pennsylvania that an individual on trial for an offense against the criminal law is permitted to introduce evidence of his good reputation in any respect which has "proper relation to the subject matter" of the charge at issue.  Such evidence has been allowed on a theory that general reputation reflects the character of the individual and a defendant in a criminal case is permitted to prove his good character in order to negate his participation in the offense charged.  The rationale for the admission of character testimony is that an accused may not be able to produce any other evidence to exculpate himself from the charge he faces except his own oath and evidence of good character.

It is clearly established that evidence of good character is to be regarded as evidence of substantive fact just as any other evidence tending to establish innocence and may be considered

*(Footnote Continued Next Page)*

**(a) By Reputation.** When evidence of a person's character or character trait is admissible, it may be proved by testimony about the person's reputation. Testimony about the witness's opinion as to the character or character trait of the person is not admissible.

Pa.R.E. 405(a).

Recently, this Court reinforced that character evidence must be established with testimony on the community opinion of the defendant:

> [e]vidence of good character offered by a defendant in a criminal prosecution must be limited to his general reputation for the particular trait or traits of character involved in the commission of the crime charged. Such evidence must relate to a period at or about the time the offense was committed . . . and must be established by testimony of witnesses as to the **community** opinion of the individual in question, not through specific acts or mere rumor.

*(Footnote Continued)* ────────────

> by the jury in connection with all of the evidence presented in the case on the general issue of guilt or innocence. Evidence of good character is substantive and positive evidence, not a mere make weight to be considered in a doubtful case, and, . . . is an independent factor which may of itself engender reasonable doubt or produce a conclusion of innocence. **Evidence of good character offered by a defendant in a criminal prosecution must be limited to his *general reputation for the particular trait or traits of character* involved in the commission of the crime charged.** The cross-examination of such witnesses by the Commonwealth must be limited to the same traits. Such evidence must relate to a period at or about the time the offense was committed, and **must be established by testimony of witnesses as to the *community opinion* of the individual in question, *not through specific acts* or mere rumor.**

*Johnson*, 27 A.3d at 248 (citation omitted and emphases in original).

*Commonwealth v. Radecki*, 180 A.3d 441, 453-54 (Pa. Super. 2018) (citation omitted and emphasis added); *see also* Pa.R.E. 404(a)(2).

For example, in *Commonwealth v. Medina*, 209 A.3d 992 (Pa. Super. 2019), the defendant contended the PCRA court erred by denying him an evidentiary hearing. *Medina*, 209 A.3d at 997. The defendant further claimed his trial counsel was ineffective by not notifying him of his right to call character witnesses who could testify as to his non-violent reputation. *Id.* In support of his contention, the defendant's PCRA petition attached affidavits from four alleged character witnesses, only one of which was located in Philadelphia.[5] *Id.* at 995, 997.

The *Medina* Court explained that only the Philadelphia affiant could testify as to the defendant's reputation in the community but that person would not have been able to testify because the affidavit failed to list the character trait the witness would be testifying about. *Id.* at 997-98. Regardless, the *Medina* Court reasoned, even if the witnesses at issue could have testified about the defendant's non-violent reputation in the community, the defendant failed to establish prejudice given the facts of the case. *Id.* at 999. For those reasons, among others, the *Medina* Court

---

[5] The other three lived in New York City, Maryland, and Florida. *Medina*, 209 A.3d at 995.

affirmed the PCRA court's denial of relief on the defendant's claim that his trial counsel was ineffective. ***Id.*** at 999-1000.

Instantly, as noted above, Appellant included an affidavit from Dotson, who lives in Virginia, and not in Appellant's Philadelphia community. ***See*** Suppl. to Am. PCRA Pet. Dotson, unlike the Philadelphia witness in ***Medina***, averred she could testify as to Appellant's reputation for honesty and truthfulness. ***Cf. id.*** at 997-98. But Dotson, like the three out-of-state character witnesses in ***Medina***, lives in Virginia and did not aver to any knowledge of Appellant's reputation in her community. ***See generally Johnson***, 27 A.3d at 248. ***Cf. Medina***, 209 A.3d at 999. Identical to the ***Medina*** Court's reasoning with respect to out-of-state witnesses, we agree with the Commonwealth[6] that Appellant failed to establish that Dotson could present admissible testimony on her community reputation. ***See Medina***, 209 A.3d at 998.

Regardless, even assuming Appellant established her claim had arguable merit, Appellant's prejudice argument spans two sentences, and such a "boilerplate allegation[] and bald assertion[] of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective." ***See Sandusky***, 203 A.3d at 1043-44; ***see also Treiber***, 121 A.3d at 464. Because Appellant is not entitled to relief, she is

---

[6] As noted above, the PCRA judge retired and did not prepare an opinion.

also not entitled to an evidentiary hearing. ***See Medina***, 209 A.3d at 999-1000; ***see also Maddrey***, 205 A.3d at 327. For these reasons, we affirm the order below. ***See Sandusky***, 203 A.3d at 1043-44.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>12/08/2020</u>